Donnie R. Cox, Esq. SBN: 137950
Dennis B. Atchley, Esq. SBN: 70036
LAW OFFICES OF DONNIE R. COX
402 North Nevada Street
Oceanside, CA 92054-2025
(760) 400-0263
drcoxlaw@aol.com
dbalaw@yahoo.com

Paul W. Leehey,   SBN: 92009
LAW OFFICE OF PAUL W. LEEHEY
210 East Fig Street, Ste. 101
Fallbrook, CA  92028-2002
Telephone (760) 723-0711
law@leehey.com

ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT

## SOUTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MANN; MELISSA MANN; N.G.P.M. a minor; M.N.A.M. a minor; M.C.G.M a minor; and  N.E.H.M. a minor - by and through their Guardian Ad Litem, Bruce Paul<br><br>            Plaintiffs<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY; POLINSKY CHILDRENS CENTER; ANDREA E. CISNEROS; LISA J. QUADROS; ANGELA REDMOND; GILBERT FERRO; DEBBIE BAYLISS; LEELA JOSEPH; NANCY GRAFF, M.D.; NONI MATIONG KELLY MONGE;  SOPHIA SANCHEZ; SUSAN SOLIS; and Does 1 through 50 Inclusive<br>                        Defendants | CASE NO:     '11CV0708 AJB  BGS<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.   Assault;<br>2.   Battery;<br>3.   False Imprisonment;<br>4.   Violation of Civil Rights;<br>5.   Monell Related Claims;<br>6.   Intentional Infliction of Emotional Distress;<br>7.   Violation of State Civil Rights (CC §43);<br>8.   Violation of State Civil Rights (CC §52.1)<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs, MARK MANN; MELISSA MANN;  N.G.P.M. a minor, M.N.A.M. a minor,  M.C.G.M a minor, and  N.E.H.M. a  minor,  by and through their *Guardian Ad Litem*, Bruce Paul allege as follows:

COMPLAINT FOR DAMAGES                    1

1.     Pursuant to this Court's local Rule 8-1, Plaintiffs assert that the statutory or other basis for the exercise of jurisdiction in this United States Federal District Court is based upon a federal question asserted under 42 U.S.C. 1983 as to violations of Plaintiffs' rights under the U. S. Constitution and laws, including those under the First, Fourth and Fourteenth Amendments, as well as supplemental jurisdiction for Plaintiffs' state claims asserted pursuant to 28 U.S.C. 1367(a); all of which Plaintiffs request be tried and heard before a jury.

2.     At all relevant times mentioned in this Complaint, Plaintiffs were residents of San Diego  County, California.

3.     BRUCE PAUL  has made application to be appointed the Guardian ad Litem for the minors, N.G.P.M., M.N.A.M.,  M.C.G.M., and  N.E.H.M., in this action.

4.     At all times mentioned herein, the COUNTY OF SAN DIEGO  was and is a public entity (hereinafter "COUNTY").

5.     At all times mentioned herein, the SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY (hereinafter "H.H.S.A."), was and is a subdivision or entity of the COUNTY OF SAN DIEGO.

6.     At all times mentioned herein, the POLINSKY CHILDRENS CENTER (hereinafter "POLINSKY"), was and is a subdivision or entity of the COUNTY OF SAN DIEGO.

7.     At all times mentioned herein, Defendant ANDREA E. CISNEROS (hereinafter "CISNEROS"),was an officer, agent, and employee of  H.H.S.A..

8.     At all times mentioned herein, Defendant LISA. J. QUADROS (hereinafter "QUADROS"), was an officer, agent, and employee of  H.H.S.A.

9.     At all times mentioned herein, Defendant ANGELA REDMOND (hereinafter "REDMOND"), was an officer, agent, and employee of H.H.S.A.

10.    At all times mentioned herein, Defendant GILBERT FERRO(hereinafter "FERRO"), was an officer, agent, and employee of H.H.S.A.

11.    At all times mentioned herein, Defendant DEBBIE BAYLISS (hereinafter

1  "BAYLISS"), was an officer, agent, and employee of H.H.S.A.

2  12.    At all times mentioned herein, Defendant LEELA JOSEPH (hereinafter

3  "JOSEPH"), was an officer, agent, and employee of H.H.S.A.

4  13.    At all times mentioned herein, Defendant NANCY GRAFF.M.D. (hereinafter

5  "GRAFF M.D."), was an officer, agent, and employee of POLINSKY CHILDRENS

6  CENTER.

7  14.    At all times mentioned herein, Defendant NONI MATIONG (hereinafter

8  "MATIONG"), was an officer, agent, and employee of H.H.S.A.

9  15.    At all times mentioned herein, Defendant KELLY MONGE (hereinafter

10  "MONGE"),was an officer, agent, and employee of H.H.S.A.

11  16.    At all times mentioned herein, Defendant SOPHIA SANCHEZ (hereinafter

12  "SANCHEZ"), was an officer, agent, and employee of H.H.S.A.

13  17.    At all times mentioned herein, Defendant SUSAN SOLIS (hereinafter "SOLIS"),

14  was an officer, agent, and employee of H.H.S.A.

15  18.    Plaintiffs are ignorant of the true names and capacities of those Defendants sued

16  herein as Does 1 through 50, Inclusive, and therefore sue them by such fictitious

17  names. Plaintiffs will amend this Complaint to show the true names and capacities of

18  said DOE Defendants when the same are ascertained.

19  19.    Plaintiffs are informed and believe and, based upon such information and belief,

20  allege that each of the Defendants is responsible in some manner for the events and

21  happenings referred to herein and was the legal cause of injury and damages to

22  Plaintiffs as herein alleged.

23  20.    Plaintiffs are informed and believe and, based upon such information and belief,

24  allege that, at all times herein mentioned, each and every Defendant was the agent

25  and/or employee of their co-defendants, and each of them, acting at all relevant times

26  herein under color of the authority of a governmental entity under the statutes,

27  ordinances, regulations, customs and usage of the State of California and/or the United

28  States Constitution and related laws.

**COMMON ALLEGATIONS**

21.     This action arises from an investigation and proceedings of a juvenile dependency investigation pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code initiated or conducted by Defendants, COUNTY OF SAN DIEGO(hereinafter "COUNTY"), also known as, or referred to as  SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY, regarding Plaintiff minors  M.N.A.M.,  M.C.G.M., and  N.E.H.M.,(born 2006), and N.G.P.M. (Born 2004), and affecting their parents, Plaintiffs MARK MANN and MELISSA MANN(hereinafter "MARK and  MELISSA respectively").

22.     Plaintiffs Mark and Melissa Mann (hereinafter "MARK and MELISSA respectively") were married in 1994.  Plaintiff MARK  is 42 years old and employed as the Director of the Wesleyan Center for 21st Century studies at Pt. Loma Nazarene University.  He has a Bachelor of Arts degree, graduating *summa cum laude* from Eastern Nazarene College in Quincy, MA, a Master of Divinity graduating *summa cum laude* from Boston University, and in 2004 was awarded a Doctor of Philosophy awarded *summa cum laude* from Boston University.

23.     Plaintiff  MELISSA  is 39 years old and employed as a Nurse Midwife at Scripps Hospital.  She obtained her undergraduate degree from Eastern Nazarene College in Quincy, MA, a Bachelor of Science degree in Nursing at the University of Massachusetts, Boston, and obtained a Master of Public Health and a Nurse Midwifery Degree in 2001 graduating *summa cum laude*.  Neither Plaintiff MARK or MELISSA has ever been arrested either as a juvenile or adult.

24.     Plaintiffs MARK and MELISSA had two natural pregnancies in 1995 and 2007 both resulting in first trimester spontaneous abortions.  Minor Plaintiff N.G.P.M.  was conceived through IVF in 2004.  Unable to conceive, the couple used IVF again.  A pregnancy resulted and the triplets, Minor Plaintiffs M.N.A.M.,  M.C.G.M., and N.E.H.M., were born on May 4, 2006.  The triplets are and always have been healthy during their young lives and have met their developmental milestones and are on target

1    for their age.

2    25.    The family moved to San Diego in July 2008 when N.G.P.M. was 4 years old and

3    the triplets were 2 years of age.  Plaintiff MELISSA heard about a parenting class at

4    The Rock Church in Point Loma.  On September 19-20, 2008, Plaintiffs MARK and

5    MELISSA attended a two-day seminar entitled "Effective Parenting in a Defective

6    World" by Chip Ingram.  Chip Ingram is the President and Teaching Pastor for *Living*

7    *on the Edge*, an international teaching and discipleship ministry.  A pastor for over 20

8    years, he is the author of nine books including, "Effective Parenting in a Defective

9    World."

10   26.    At the seminar, when discussing discipline techniques when a young child has

11   drawn a line in the sand and will not listen to you after warning and is challenging your

12   authority, Pastor Ingram advocated using a wooden spoon to the bottom, not your hand,

13   and flicking your wrist.  The stated goal was for it to cause a sting and for it to hurt, but

14   not to cause damage.  The Manns had also read James Dobson's book, *Dare to*

15   *Discipline,* and he had also recommended a spanking should be reserved for the

16   moment a child (age ten or less) expresses a defiant "I will not" or "You shut up!"

17   After the Manns' started to employ the teachings Pastor Ingram recommended, they

18   found the children were responding and the situation with them had improved.

19   27.    On Monday April 5, 2010, MARK picked up N.G.P.M. at her bus stop at

20   approximately 4:50 p.m.  MARK called Brittney Wells, the babysitter caring for the

21   triplets at Kid Ventures, and asked to meet at Chick-Fil-A for dinner.  Brittney dropped

22   off the triplets with MARK.  The children were quite rambunctious at dinner.

23   MELISSA was taking a nap at home before heading off to work all night at the

24   hospital.  MARK and the children returned home just as MELISSA was leaving for

25   work.  MARK prepared strawberry smoothies  for the children as they watched

26   television.  N.G.P.M.  spilled hers on the floor in the living room and the triplets

27   finished theirs.   MARK had run out of strawberries so he told N.G.P.M. he would get

28   her another dessert if she would lead the triplets upstairs and get them in the bath.

28.    MARK  had previously adjusted the hot water heater for the home so that the bath water would never get hot enough for the children to be scalded by the hot water. All the children except for N.E.H.M  followed N.G.P.M.

29.    N.E.H.M.  had climbed up on the entertainment center (2 to 3 feet) and began pulling out DVDs and throwing them on the floor.  Mr. Mann told her to stop and get down.  She told him, "No."  He told her if she did not stop and get down she would get a paddle.  She told him she could not get down.  MARK told her if she got up she could get down.  MARK retrieved one of the wooden cooking spoons from the kitchen and N.E.H.M.  immediately got down.  He told her to go upstairs and get into the bath with the rest of the children.

30.    MARK shortly thereafter realized that the bathtub water was not running but rather the sink water.  He went upstairs into the bathroom and N.E.H.M.  was naked, standing on the stone sink, splashing water and soap all over the mirror, sink top, and bathroom.  Countless times MARK and MELISSA have told the children not to climb onto the sink because it is stone, is approximately 3 feet high off a hard linoleum floor, is very slippery when wet, and therefore very dangerous.

31.    MARK  put her on the floor while giving her one quick spank with the spoon. As he did it, she wiggled away and it caught her on the hip/lower back area just above the buttocks.  He then put N.E.H.M. in the bathtub with the other children. This was about 8:00 p.m.  N.G.P.M. then told him N.M.A.M.  had also been playing on the sink counter.  MARK took N.M.A.M.  out of the tub, explained why he was going to get a paddle, and gave him one quick paddle.  MARK them got them dressed for bed. MARK noticed a red mark appeared where he had swatted N.E.H.M. .  She also had a scab that had come off from a rug burn, unrelated to the swat.  He applied some ointment to it and a bandage to the area where the scab had come off.  The children went to bed.

32.    The following day, April 6th, MARK was contacted by the director at the children's preschool regarding the redness on N.E.H.M. 's backside.  He met with the

1   director and told her what had occurred.  He was informed they were required to make

2   a referral to Child Protective Services.  MARK was present when the director called in

3   the referral to CPS.  It was noted that when the call was made MARK was present and

4   would be willing to talk with them.

5   33.     Defendant CISNEROS  contacted the family by telephone in the morning on

6   April 7th.  She arranged a meeting with MELISSA at her home.  Upon meeting

7   MELISSA, Defendant CISNEROS  informed MELISSA  that she has already gone to

8   N.G.P.M.'s school and spoken with her.  She observed the "red mark" on N.E.H.M. 's

9   hip above the butt, which by this time was barely visible.  After obtaining information

10  regarding the incident, including that Plaintiffs had taken action to insure that MARK

11  would have help in taking care of the children in the form of a live-in babysitter,

12  CISNEROS left the home without detaining or removing the children.

13  34.     Defendant CISNEROS  unexpectedly returned twenty minutes later.  Defendant

14  CISNEROS now  told MELISSA  that she *must* sign a ' Voluntary Safety Plan' or

15  CISNEROS  would take her children from the home.  The 'Voluntary' plan allowed

16  Defendant COUNTY and its employees to intervene in the raising of the children,

17  including discipline, medical examinations, entering the home at anytime the COUNTY

18  and its employees deemed appropriate,  and excluded MARK from being present alone

19  with the children at any time. This coercive action was taken even though Defendant

20  CISNEROS knew that the children were not in imminent danger of serious bodily

21  injury.

22  35.     Fearing the loss of her children because of these threats, coercion and undue

23  influence,  MELISSA felt compelled to sign the plan.  MELISSA was not provided

24  with a statement of her rights or the number for the ombudsman as required by

25  Defendant COUNTY'S policy and state law.

26  36.     MELISSA  called the social worker's supervisor Defendant QUARDROS to

27  register her complaint regarding the actions of Defendant CISNEROS.  Defendant

28  QUADROS simply stated she would provide CISNEROS "with more training,"

1   however she insisted that the "Voluntary" plan would remain in effect.

2   37.     Defendant CISNEROS  thereafter met with MARK at his office at Point Loma

3   Nazarene College early in the afternoon.  MARK explained to her the circumstances of

4   Monday evening as outlined in paragraphs above.  CISNEROS  then concluded the

5   interview telling MARK that she did not have to look at N.M.A.M.  because she

6   already had and did not notice anything.  MARK thereinafter begged CISNEROS not to

7   exclude him from being with his children and  CISNEROS then agreed to  amended the

8   'Voluntary' plan.   She had MARK sign the new ' Voluntary' plan and told him this

9   preempted the one signed by MELISSA earlier in the day.  Again, CISNEROS knew

10  there was no immediate danger to the children.

11  38.      On Thursday morning April 8, MELISSA met with her associate pastor,  Marc

12  Otto, a former CPS worker for the County of San Diego.  Her pastor was also present

13  for the meeting.  MELISSA explained to them what had occurred and Mr. Otto

14  informed her that CISNEROS  had violated her rights.  He also explained to MELISSA

15  that she is well within her rights to request another social worker if she is not

16  comfortable with social worker CISNEROS.

17  39.     MELISSA subsequently called QUADROS, CISNEROS' supervisor, and

18  requested another social worker.  QUADROS denied her request.  MELISSA then

19  requested that if CISNEROS was to remain as her CPS agent, that she be accompanied

20  by another CPS agent.  Again QUADROS denied her request.   MELISSA then spoke

21  with Defendant FERRO, QUADROS' supervisor concerning the actions of both

22  CISNEROS, and QUADROS.  FERRO refused to intervene in the matter even though

23  he knew that the children were in no imminent danger of harm.  At no time did either

24  MARK or MELISSA fail to follow the demands of the CPS agents.

25  40.     MARK then received a call from QUADROS about coming to the home to

26  examine N.M.A.M. .  MARK agreed to the visit.   QUADROS then told MARK that if

27  MELISSA continued to complain about the CPS agents to their respective supervisors

28  and failed to cooperate with these agents  that the children would be removed from the

1   home.  CISNEROS then called at approximately 3:00 pm. on April 8th and informed

2   MARK she was coming by to take a picture of N.M.A.M. 's bottom and would be there

3   in 20 minutes.  MARK informed her that he was taking the kids to the condominium

4   pool and would meet them there.

5   41.    At approximately 5:30 p.m., CISNEROS  and REDMOND arrived and after

6   viewing N.M.A.M. 's bottom with the help of  MELISSA, determined that there were

7   no marks.  However REDMOND claimed to notice a slight discoloration to

8   N.M.A.M.'s  forehead.  REDMOND  stated she would have to take a picture of it.

9   MELISSA asked why and was told because they do not know how it happened.

10  MELISSA then told them to take the picture and then please leave her home.

11  42.    The following day, April 9, 2010,  MELISSA called to inquire as to why the

12  photograph  was taken of her son's  head, and to complain regarding the procedure and

13  attitude of the CPS agents. MELISSA  stated she wanted to do everything that she can

14  to be cooperative with the agency in order to end the agency's involvement in the

15  families' lives.  She also would be willing to have N.M.A.M.  seen by a doctor.

16  QUADROS suggested that N.M.A.M. be taken to Childrens Hospital.

17  43.    MARK took N.M.A.M.  to the Chadwick Center of Children's Hospital that

18  afternoon as requested.  CISNEROS  was there and demanded that N.E.H.M.  also be

19  produced for an examination.   The babysitter promptly brought N.E.H.M.  to the

20  Chadwick Center.  No serious injuries were  reported for either child and  the family

21  returned home. For the next 2 days both parents continued  to care for their children

22  and were in complete compliance with the "voluntary plan" and other than expressing

23  concern about the attitude of the agency toward their family, had to this point been

24  fully cooperative with the COUNTY.

25  44.    On April 12, 2010, Defendant CISNEROS at the behest and with the approval of

26  any and all other Defendants filed, under penalty of perjury, an "APPLICATION AND

27  DECLARATION IN SUPPORT OF PROTECTIVE CUSTODY WARRANT"

28  (hereinafter "Application") requesting that the children be detained and removed from

the custody of MARK and MELISSA.  Said warrant falsely declared that there was "clear bruising" on N.E.H.M and N.M.A.M.  from corporal discipline, and that MELISSA had failed to be "cooperative in allowing the Agency to conduct an investigation."  These statements were false, and the Defendants and each of them knew that they were false, and that these statements were likely to mislead a court to approve the removal and detention of the minor Plaintiffs.  At the same time as the "Application" was filed with the Juvenile Court, Defendants and each of them filed a Petition under the penalty of perjury, "pursuant to Welfare and Institutions Code 300 alleging "excessive discipline". These allegation were also false, and the Defendants and each of them knew that they were false.

45.     Further, these allegations were made in direct retaliation for the complaints registered by Plaintiffs MARK and MELISSA against the Defendants and each of them for Defendants' actions in the unlawful interference in Plaintiffs' MARK and MELISSA'S families lives as outlined above in aforesaid paragraphs.

46.     As a result of the conduct and actions of Defendants, and each of them, the Plaintiffs' minor children were removed from the care, custody and control of their Plaintiff PARENTS.

47.     Subsequent to their removal by COUNTY CPS agents the Plaintiff minor children M.C.G.M., N.G.P.M., N.M.A.M.  and N.E.H.M.  were taken to the Polilnsky Children's Center  where they underwent intrusive physical examinations, including but not limited to x-rays, blood tests, and sexual abuse examinations.  These examinations were done without the consent  or presence of their parents MARK or MELISSA, and constituted a violation of the rights of all Plaintiffs by all defendants.

48.     The Defendants and each of them further violated the rights of Plaintiff MARK by reporting and listing MARK on the California State Child Abuse Central Index (hereinafter "CACI").   The information reported to the CACI -  that MARK had physically abused his children -  was false.  Moreover the Defendants and each of them knew that it was false.  This report and any and all false allegations made by

Defendants and each of them was in part retaliation for the complaints made by Plaintiffs MARK and MELISSA about the action of the Defendants and each of them.

49.   The unlawful detention of the minor Plaintiffs continued until July 14, 2010 wherein after trial on the false allegations in the Petition, the Court found "THAT THE ALLEGATIONS ARE NOT TRUE AND THE PETITION IS DISMISSED."

50.   Further, despite the finding of the Juvenile Court that the allegations against MARK were "NOT TRUE" Defendants and each of them refuse to report and remove Plaintiff MARK from the CACI.

51.   The removal and detention, and continued detention, of the minor Plaintiffs and from the care and custody of Plaintiff's MARK and MELISSA, was by the joint actions of, and in concert with, the aforementioned agents and employees of the Defendant COUNTY, and each of them, and was done without probable, reasonable or just cause, by failing to provide exculpatory and favorable evidence, by providing false and misleading evidence, by the use of undue influence, coercion and/or duress and when they knew the minor children were not in imminent danger of serious bodily injury to the minor Plaintiffs and  and without determining whether the scope of the intrusion was reasonably necessary to avert the specific injury; and therefore was in violation of clearly established legal authority. See  *Mabe v. San Bernardino County, Dept. Of Pub. Servs.* (9th Cir. 2001) 237 F.3d 1101,  *Wallis v. Spencer* (9th Cir. 2000) 202 F.3d 1126, as confirmed in *Rogers v. County of San Joaquin* (9th Cir. 2007) 487 F. 3d 1288, and was a violation of Plaintiffs' constitutional rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, and Article 1, Section 1 of the California State Constitution (including the right of privacy).

52.   From and after April 7, 2010, and thereafter, Defendants COUNTY, and all named Defendants, and Does 1 to 50, acted together in initiating and conducting investigations and proceedings, and related matters and conduct, pursuant to (Section 200) of Part 1 of Division 2 of the California Welfare and Institutions Code relating to allegations of child abuse and/or neglect; and did so without any just or reasonable

cause, and in violation of both statutory and case law, and with an intent by Defendants to cause injury to Plaintiffs, or with a willful and conscious disregard of the Plaintiffs' rights or safety, carried out, initiated, performed, authorized and/or conducted, with the knowledge, consent, authorization and in concert with all other Defendants, as follows:

    a.    By using false, coercive, intimidating, abusive, demeaning and improper conduct during their investigation of Plaintiffs, and using coercion in forcing MARK AND MELISSA to sign a safety plan when no basis for imposing and forcing such a plan was present;

    b.    By removing the minor Plaintiffs from the care, custody and control of their parents MARK AND MELISSA, and thereafter continuing to detain them until July 14, 2010, without just or reasonable cause, without consent of MARK and MELISSA, without the existence of an imminent danger of serious bodily injury to said children and without determining whether the scope of the intrusion was reasonably necessary to avert the specific injury; (in violation of *Mabe v. County of San Bernardino* (9th Cir. (2001) 237 F.3d 1101; and *Wallis v. Spencer* (9th Circ. 2000) 202 F.3d 1126; as confirmed by *Rogers v. County of San Joaquin* (9th Cir. 2007) 487 F.3d 1288 and other applicable case and statutory law);

    c.    By falsely declaring under penalty of perjury, in an application for a detention warrant facts that the defendants and each of them knew were false and misleading, and which did not provide exculpatory, favorable, and unbiased evidence in retaliation for Plaintiff MARK and MELISSA'S exercise of their constitutional rights including those as to their freedom of speech, due process and as to familial association under both state and federal law.

    d.    By presenting, and continuing to present, biased, unfounded, untrue, misrepresented, incomplete, and fabricated evidence and testimony to the Court, including for the purpose of continuing the juvenile court

proceedings and having the Minor Plaintiffs  placed, and continue to be placed, under the custody and control of Defendant H.H.S.A., including but not limited to, the following:

i.    **N.G.P.M.:** Abuse of Sibling (Welfare & Institutions 300(j)).  The child's sibling has been abused or neglected as defined in subdivision (a), (b), (d), (e) or (I), and there is substantial risk that the child will be abused or neglected as defined in those subdivisions.  Count One: On or about April 5, 2010, the child's father Mark Mann, subjected the child's siblings M.N.A.M. and N.E.H.M., to serious physical harm and the substantial risk thereof, including but not limited to, excessive discipline, to wit, the father hit the child with a wooden spoon on the child's naked back and buttocks causing bruising and both parents have received education on appropriate discipline techniques but they continue to use corporal punishment and they are not cooperative with the Agency's intervention and there is substantial risk this child will suffer physical harm, inflicted non-accidentally by her parent pursuant to Welfare & Institutions Code section 300(a).

**M.C.G.M. :** Abuse of Sibling (Welfare & Institutions Code 30(j)).  The child's sibling has been abused or neglected as defined in subdivision (a), (b), (d), (e) or (I), and there is substantial risk that the child will be abused or neglected as defined in those subdivisions.  Count One: On or about April 5, 2010, the child's father Mark Mann, subjected the child's siblings M.N.A.M. and N.E.H.M., to serious physical harm and the substantial risk thereof, including but not limited to, excessive discipline, to wit, the father hit the child with a wooden spoon on the child's naked back and buttocks causing bruising and both parents have received education

on appropriate discipline techniques but they continue to use corporal punishment and they are not cooperative with the Agency's intervention and there is substantial risk this child will suffer physical harm, inflicted non-accidentally by her parent pursuant to Welfare & Institutions Code section 300(a).

**N.E.H.M.:** Serious Physical Harm (Welfare & Institutions Code Section 300(a)). The child has suffered, or there is substantial risk that the child will suffer serious physical harm inflicted non-accidentally upon the child by the child's parent or guardian.  Count 1: On or about April 5, 2010, the child's father Mark Mann, subjected the child to serious physical harm and the substantial risk thereof, including but not limited to, excessive discipline, to wit, the father hit the child with a wooden spoon on the child's naked back and buttocks causing bruising and both parents have received education on appropriate discipline techniques but they continue to use corporal punishment and they re not cooperative with the Agency's intervention and there is substantial risk the child will suffer serious physical harm inflicted non-accidentally.

**M.N.A.M.:** Serious Physical Harm(Welfare and Institutions Code Section 300 (a)).  The child has suffered, or there is substantial risk that the child will suffer serious physical harm inflicted non-accidentally upon the child by the child's parent or guardian. Count 1: On or about April 5, 2010, the child's father Mark Mann, subjected the child to serious physical harm and the substantial risk thereof, including but not limited to, excessive discipline, to wit, the father hit the child with a wooden spoon on the child's naked back and buttocks causing bruising and both parents have received education on appropriate discipline techniques but they continue to

use corporal punishment and they re not cooperative with the Agency's intervention and there is substantial risk the child will suffer serious physical harm inflicted non-accidentally.

ii.  In signing, filing and/or instituting Applications, Petitions, and related reports and documentation thereto, under Welf. & Inst. Code § 300 proceedings in the Juvenile Court (Case No.517774A-D) as to the Minor and Parents Plaintiffs, containing biased, false, incomplete and fabricated evidence, allegations, and/or testimony, including information and evidence obtained by intimidation, coercion and duress as defined in Civil Code § 1569, and including, but not limited to, false allegations that the minor Plaintiffs were in danger of serious bodily injury, causing and resulting in the continued dependency investigation and proceedings regarding said minor children without just or reasonable cause; and

iii.  By causing, and continuing to cause, the denial of the Minor Plaintiffs, physical and legal custody from their parents Plaintiff MARK and MELISSA, until long after any alleged or perceived reasons ceased, up through and including July 14, 2010;

(Plaintiffs submit that further matters and issues will be shown upon receipt and disclosure of the records and files of the Juvenile Court and H.H.S.A.. which are not available to Plaintiffs due to confidentiality and the requirements of Welf. & Inst. Code §§ 827 and 828; and therefore, further grounds will be shown by amendment or at the time of trial or further proceedings in this matter.)

53.  The aforesaid conduct of Defendants, and their agents or employees in removing the children from the care and custody of their parents, in using coercion, intimidation and duress upon Plaintiffs, in presenting the aforesaid false, misrepresented and fabricated evidence, allegations and testimony and/or in failing to disclose known exculpatory evidence, was done jointly and in concert by the individual

Defendants and Does 1 through 50, Inclusive, to cause injury to the Plaintiffs, or was despicable conduct carried on with the willful and conscious disregard of the Plaintiffs' rights or safety.

54.     As a result of the joint actions of the Defendants, and each of them, occurring between the period of on or about April 7, 2010 through and including July 29, 2010, Plaintiffs have suffered, and will continue to suffer damages, including physical injuries and/or severe emotional distress, as a result of these violations of their personal and civil right of familial association.

55.     The Plaintiffs have submitted a Government tort claim to the COUNTY on or about October 5, 2010.  Said claim was denied by COUNTY on November 30, 2010.

**FIRST CAUSE OF ACTION ASSAULT AND BATTERY - By Plaintiff Minors N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. Against ALL DEFENDANTS, and Does 1 through 50, Inclusive**

56.     Plaintiff realleges, adopts and incorporated as if set forth at length, and to the extent applicable, paragraphs 1 through 55.

57.     That Defendants, and Does 1 through 50, Inclusive, by their conduct intended to cause, and did cause, Plaintiffs minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. great apprehension and fear of harmful contact to their person by, but not limited to, their removal and detention from their Parents Plaintiff MARK AND MELISSA, by making false accusations of physical abuse and neglect of Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. , including for use as testimony and evidence in the aforementioned Juvenile Court proceedings.

58.     Further, Defendants, and Does 1through 10 did cause the great apprehension and fear of harmful contact by Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. to their person, by but not limited to, their conduct in or unlawful authorization of the  physical examination,  including x rays, blood tests and sexual abuse examination, the scope of which is not yet known, of Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. .

59.     All Defendants,  and Does 1 through 50, Inclusive, with the encouragement, knowledge, advice, counsel and at the request, direction, authorization and/or agreement of the other defendants, acted with the intent to make, and did make, or caused others to make, harmful contacts with Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  bodies while unlawfully removing and detaining,  continuing to detain, and authorizing or conduction the unlawful physical examination out lined above.  At no time did Plaintiff minors, constructively or otherwise, consent to such contact, nor was any proper consent obtained by law, by court order, or from their parents.

60.     Defendant COUNTY, is vicariously responsible for the conduct of said Defendants under Government Code § 815.2.

61.     As a direct and legal result of Defendants' tortious and unlawful conduct, Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. have suffered extreme physical, mental and/or emotional distress, including anguish and fear to an extent and in an amount to be proven at trial.

62.     All Defendants and Does 1 through 50, Inclusive, acted with malice and with the intent to cause injury to Plaintiffs minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. , or acted with a willful and conscious disregard of the rights of said Plaintiff minors, in a despicable manner.  Therefore, Plaintiff minors are entitled to an award of punitive damages for the purpose of punishing ALL INDIVIDUAL Defendants, and Does 1 through 50, Inclusive, to deter them and others from such conduct in the future.

### SECOND CAUSE OF ACTION BATTERY - By Plaintiffs N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.   Against All Defendants, and Does 1 through 50, Inclusive

63.     Plaintiff realleges, adopts and incorporates as if set forth at length, and the extent applicable, paragraphs 1 through 62.

64.     All Defendants,  and Does 1 through 50, Inclusive, with the encouragement, knowledge, advice, counsel and at the request, direction, authorization and/or

1  agreement of the other defendants, acted with the intent to make, and did make, or

2  caused others to make, harmful contacts with Plaintiffs minors  N.G.P.M., M.N.A.M.,

3  M.C.G.M, and N.E.H.M.  bodies while unlawfully removing, detaining, and continuing

4  to detain them.  At no time did Plaintiff minors constructively or otherwise, consent to

5  such contact, nor was any proper consent obtained by law, by court order, or from their.

6  65.     Plaintiffs are also informed and believe that on or after April 12-14, 2010, All

7  Defendants, and Does 1 through 50, Inclusive, had medical examinations and

8  procedures conducted on Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and

9  N.E.H.M., without the knowledge, consent, authorization of their parents, Plaintiffs

10  MARK and MELISSA, without the consent or presence of Plaintiffs MARK and

11  MELISSA, and without any order or warrant for such examination, in violation of

12  Plaintiff minors' rights, and in violation of Plaintiff MARK and MELISSA'S rights,

13  including those as set forth in clear and established law in the case of *Wallis v. Spencer*

14  (9th Cir. 2000) 202 F.3d 1126.

15  66.     As a direct and legal result of Defendants' wrongful, tortious and unlawful

16  conduct, Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  have

17  suffered extreme physical, mental and/or emotional distress and injuries, including

18  anguish and fear to an extent and in an amount to be proven at trial.

19  67.     ALL INDIVIDUAL DEFENDANTS and Does 1 through 50, Inclusive, acted

20  with malice and with the intent to cause injury to Plaintiff minors D.D. and A.S., or

21  acted with a willful and conscious disregard of the rights of said Plaintiff minors, in a

22  despicable manner.  Therefore, Plaintiff minors are entitled to an award of punitive

23  damages for the purpose of punishing ALL INDIVIDUAL DEFENDANTS, and Does 1

24  through 50, Inclusive, to deter them and others from such conduct in the future.

25  ///

26  ///

27  ///

28  ///

COMPLAINT FOR DAMAGES              18

### THIRD CAUSE OF ACTION - FALSE IMPRISONMENT - BY PLAINTIFF MINORS   N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  - N.G.P.M, M.N.A.M, M.C.G.M., and N.E.H.M.  Against All  Defendants and Does 1 through 50, Inclusive

68.     Plaintiff realleges, adopts and incorporates as if set forth at length, and to the extent applicable, paragraphs 1 through 67.

69.     All Defendants, and Does 1 through 50, Inclusive, unlawfully removed, detained, and continued to detained Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  without evidence of any imminent danger of serious bodily injury, without just or reasonable cause, without consent of their parents Plaintiff MARK and MELISSA, and/or without probable cause; and therefore deprived them of their personal civil liberties. The unlawful removal, and thereafter the continued detention of said minors, as part of a dependency investigation commenced on April 12, 2010, and continued intermittently until the matter was dismissed on July 14, 2010.

70.     Defendant COUNTY,  is vicariously responsible for the conduct of these Defendants under Government Code § 815.2.

71.     As a legal result of Defendants' actions, Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  were physically, mentally and/or emotionally injured, all to an extent and in an amount subject to proof at trial.

72.      All individual Defendants, and Does 1 through 50, Inclusive, acted with malice and with the intent to cause injury to Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. , or acted with a willful and conscious disregard of the rights of said Plaintiffs in a despicable manner. In addition, said Defendants, and each of them, engaged in despicable conduct that subjected Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  to cruel and unjust hardship in conscious disregard of their rights. Therefore, Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  are entitled to an award of punitive damages for the purpose of punishing ALL INDIVIDUAL Defendants, and Does 1 through 50, Inclusive, to deter them and others

1  from such conduct in the future.

2  **FOURTH CAUSE OF ACTION VIOLATION OF CIVIL RIGHTS**
3  **UNDER 42 U.S.C. §§ 1983 BY ALL PLAINTIFFS AS AGAINST**
4  **ALL INDIVIDUAL  DEFENDANTS**

5  73.    Plaintiffs  adopt and incorporate as if set forth at length, and to the extent
6  applicable, paragraphs 1 through 72.

7  74.    Commencing on or about April 7, 2010, and continuing through July 14, 2010,
8   All Individual Defendants, and Does 1 through 50, Inclusive, and each of them, as
9  alleged herein, were acting under color of state law when they knew and agreed, and
10  thereby conspired, to unlawfully detain, seize, question, threaten, examine, coerce
11  and/or initiate and pursue an investigation and proceedings (without any basis) as to
12  Plaintiff minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  and to cause said
13  minors to be removed from the care, custody, and control of their parents  MARK and
14  MELISSA, and to become dependents of Defendants COUNTY, and continue to be so
15  removed and a dependent of the COUNTY until July 14. 2010, and did so without
16  proper reason or authority, (i.e. see *Mabe v. County of San Bernardino* (9th Cir. (2001)
17  237 Fd. 3rd 1101; *Rogers v. County of San Joaquin*; California Welf. and Inst. Code §§
18  306, 309, 311 and 319) without reasonable probable cause, and with deliberate
19  indifference to the rights of said Plaintiffs.

20  75.    Further, the Individual Defendants and each of them, conspired to and did in fact,
21  make false and misleading statements in an application and warrant  for custody of
22  PLAINTIFF minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. , in order to
23  deceive the court and to harm Plaintiffs, and each of them, by causing the court to order
24  the removal of minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. from the care
25  custody and control of Plaintiffs MARK and MELISSA, depriving all Plaintiffs of their
26  rights under the 1st, 4th and 14th Amendment to the United States Constitution.

27  76.    The aforesaid Defendants, and each of them, conspired to interfere with and
28  violate the civil rights of the Plaintiffs, as set forth under 42 U.S.C. § 1983, including

violation of the Plaintiffs' rights found in the First, Fourth and Fourteenth Amendments of the United States Constitution, by, but not limited to, acting and conspiring to force Plaintiff PARENTS to enter into a "voluntary" plan(s), by retaliating against Plaintiffs for exercise of their freedom of speech, and by causing to  remove, detain and continue to detain, the person and/or physical and legal custody of minors plaintiffs N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  from the care, custody, and control of their parents,  MARK and MELISSA, without proper or just cause and/or authority; by the use of intimidation, coercion and duress, and by using false and fabricated evidence and testimony, and failing to provide exculpatory evidence, during the investigation and initiation and pendency of the dependency proceedings, including the application for a warrant for the removal of minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. , in violation of, and interference to, the Plaintiffs' constitutional liberty interests under the First Amendment, their fundamental rights to familial association and due process under the Fourteenth Amendment, and in violation of Fourth Amendment rights against unreasonable searches and seizures.

77.     Further, the aforementioned Defendants did conspire to violate due process rights of the Plaintiff MARK under the 14th Amendment, by, but not limited to, falsely reporting to  the CACI that MARK had physically abused his children.  Said report caused MARK to be listed on the CACI, to his detriment.  Thereinafter, the Defendants refused to remove his name, or request that his name be removed, after demand, once the juvenile court  found that the allegations were  untrue.

78.     As a direct result of these Individual Defendants' violations, and in accordance with 42 U.S.C. §1983, Plaintiffs civil rights have been violated in that they have suffered, and will continue to suffer damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys fees, costs and expenses in the underlying case, and in the matter, as authorized by 42 U.S.C. §1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

79.     Said individual Defendants' wrongful conduct as herein alleged was intentional,

1   done with malice, and with conscious disregard for the rights of the Plaintiffs herein,

2   and as a result of their despicable conduct, Plaintiffs are therefore entitled to recover

3   punitive damages from said individual Defendants' wrongful acts for the purposes of

4   punishing said Defendants and to deter others from such conduct in the future.

5          **FIFTH CAUSE OF ACTION - MONELL RELATED CLAIMS**

6           **By Plaintiffs Against the COUNTY, POLINSKY and H.H.S.A.**

7   80.    Plaintiffs reallege, adopt and incorporate as if set forth at length, and to the extent

8   applicable, paragraphs 1 through 79.

9   81.   At all relevant times herein, Defendants COUNTY, POLINKSY,  including

10   through its H.H.S.A.  agency, established and/or followed policies, procedures,

11   customs and/or practices (hereinafter collectively referred to as "policy" or "policies")

12   which policies were the cause of violation of Plaintiffs' constitutional rights granted to

13   them pursuant to 42 U.S.C. § 1983, as well as the case of *Monell v. New York City*

14   *Department of Social Services* (1978) 436 U.S. 658, including those under the First,

15   Fourth and Fourteenth Amendments; including but not limited to:

16          a.     The police of using undue influence, coercion and/or duress to cause

17                 parents to enter into alleged "voluntary" agreements, including with the

18                 threat of removal of their children if they do not do so.

19          b.     The policy of detaining and/or removing children from their parents

20                 without exigent circumstances (imminent danger of serious bodily harm),

21                 court order or consent of their parent or legal guardian;

22          c.     The policy of using false and misleading information and failing to

23                 provide exculpatory information in the application for a warrant to remove

24                 and detain children from the home of their parents.

25          d.     The policy of detaining and/or removing children from their parents and

26                 failing to determine whether the scope of the intrusion was reasonably

27                 necessary to avert the specific injury;

28          e.     The policy of causing minor children to be dependents of the County, and

continuing to be dependents, removing their legal and physical custody from their parents beyond a reasonable period after the alleged basis for any such removal and continued detention is negated;

f. The policy of using intimidation, fear, threats, coercion, retaliation, misrepresentation and duress during their investigation of allegations of child abuse and/or neglect, and during the pendency of dependency proceedings;

g. The policy of using trickery, duress, fabrication and/or false testimony or evidence, and in failing to provide exculpatory evidence, in preparing and presenting reports and court documents to the Court including warrants for removal of children from the care custody and control of their parents, causing an interference with the Plaintiffs' rights, including those as to due process and familial relations and injuring and harming them;

h. The policy of signing and presenting petitions in dependency actions under the penalty of perjury without personal knowledge of the truth and/or accuracy of the allegations contained therein;

i. The policy of causing medical examinations and/or procedures of a minor child without the knowledge, consent, presence, and/or authorization of the parents or legal guardians, and without exigency (imminent danger of serious bodily harm), without medical need, and without court order;

j. The policy of failing to promptly provide exculpatory and/or relevant and related evidence, testimony, reports and information regarding the ongoing investigation of juvenile dependency matters, when such information would negate the basis for continued detention of the minor children; and

k. By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train and supervise its officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth and

Fourteenth Amendments, and under California law, when performing actions related to the investigation of child abuse and neglect, including dependency type proceedings.

l.     The policy of first placing without just cause or due process the names of the those accused of abusing and or neglecting their children on the CACI, and then refusing to remove, or request the removal, of those names once the Court has found that the allegation are untrue.

(The list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile records, which are subject to access, use and/or disclosure pursuant to California Welf. & Inst. Code §§ 827 and 828).

82.     Defendants COUNTY, as well as POLINSKY and H.H.S.A. as an  agent of the COUNTY, had a duty to Plaintiffs at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the First, Fourth and Fourteenth Amendments; to use reasonable care to select, supervise, train, control and review the activities of all agents, officers and employees in their employ, including within H.H.S.A.; and further, to refrain from acting with deliberate indifference to the Constitutional rights of Plaintiffs herein so as to not cause them the injuries and damages alleged herein.

83.     COUNTY breached its duties and obligations to Plaintiffs, including but not limited to, failing to establish, implement and follow the correct and proper Constitutional polices, procedures, customs and practices; by failing to properly select, supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards; and by permitting named Defendants, and Does 1 through 50, Inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged.

84.     Defendants knew, or should have known, that by breaching the aforesaid duties

COMPLAINT FOR DAMAGES              24

and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies and acts as alleged herein and that such breaches occurred in contravention of public policy and as to their legal duties and obligations to Plaintiffs.

85.   These actions, or inactions, of Defendants are the legal cause of injuries to Plaintiffs as alleged herein; and as a result thereof, Plaintiffs have sustained general and special damages, as well as incurring attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

## SIXTH  CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - By Plaintiffs Against All Defendants

86.   Plaintiffs reallege, adopt and incorporate as if set forth at length, and to the extent applicable, paragraphs 1 through 85.

87.   All Defendants, and Does 1 through 50, Inclusive, engaged in the aforementioned outrageous, unprivileged conduct as set forth herein, including, but not limited to; by forcing Plaintiff Parents to enter into alleged "voluntary" agreements; by retaliating against Plaintiffs, for the Plaintiff  Parents exercise of their right of free speech;  by providing the court with false and misleading information in a warrant to remove the minor children from their parents' care custody and control;  by wrongfully and unlawfully removing, detaining, and the continued detention, of minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.; by investigating and questioning Plaintiffs with intimidation, coercion and duress; by maliciously withholding exculpatory evidence; by falsely and maliciously alleging and reporting that the physical health and safety of minors  N.G.P.M., M.N.A.M., M.C.G.M., and N.E.H.M.  were threatened by their parents;  by failing to provide evidence and information which would negate removal and continued detention of Plaintiff minors, including when properly and reasonable requested; by causing the minor children to be physically examined without their parents' presence; and by first placing without just cause or due process the names of

those accused of abusing and or neglecting their children on the CACI, and then refusing to remove, or request the removal, of those names once the court has found that the allegation are untrue.

88.     Defendant COUNTY is vicariously responsible for these Defendants' conduct under Government Code §815.2; and said conduct is not immunized, including by Government Code §820.21

89.     These Defendants intended to cause, or acted in reckless disregard of causing, physical and emotional distress when they engaged in such conduct, which they knew not to be true and proper.

90.     As a legal result of Defendants' tortious conduct, Plaintiffs, and each of them, suffered physical and emotional distress, including, but not limited to, fright, nervousness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial.

91.     All individual Defendants, and Does 1 through 50, Inclusive, knowingly and willfully acted with malice and oppression and with the intent to harm Plaintiffs in a despicable manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these individual Defendants and to deter them and others from such conduction in the future.

## <u>SEVENTH CAUSE OF ACTION VIOLATION OF STATE CIVIL RIGHTS (UNDER CALIFORNIA CIVIL CODE § 43) AGAINST ALL DEFENDANTS - By All Plaintiffs</u>

92.     Plaintiffs reallege, adopt and incorporate as if set forth at length, and to the extent applicable, paragraphs 1 through 91 herein.

93.     All Defendants, and Does 1 through 50, Inclusive, are individuals who were acting under color of law in conducting an investigation and proceedings pursuant to California and federal law, including as to proceedings described in California Government Code § 820.21(a), and, including, but not limited to, the required compliance to California Welfare and Institutions Code Sections:

-290.1 (regarding the requirements when taking a child into custody and immediately filing a petition including as to the requirements in *Mabe v. San Bernardino County, Dept. Of Pub. Servs.* (9th Cir. 2001) 237 F.3d 1101, 1107);

-300 (including regarding the disruption of or intrusion into family life);

-305 (regarding conditions allowing temporary custody without warrant);

-306 (including regarding the conditions in which to take, and maintain, custody of a minor without a warrant to remove);

-307 (including regarding required notice to parents and giving preference to alternatives which least interfere with parents custody of the minor);

-307.4 and 308 (regarding providing immediate notice to parents and other certain rights);

-309 (including regarding the conditions required to investigate the facts and circumstances of a minor taken into custody and when to release said minor to the custody of his parent or guardian, or to temporarily place the minors);

-311 (regarding the requirements of filing a petition pursuant to the requirements of section 332);

-319 (including regarding the requirements of filing a court report regarding why a minor has been removed and the need for continued detention);

-324.5 (regarding medical procedures of a child in protective custody), and including as required in *Wallis v. Spencer* (9th Cir. 2000) 202 F.3d 1126; and

-332 (regarding the filing and contents of a petition).

94.     To the extent not separately responsible, Defendant COUNTY is vicariously responsible for these Defendants' conduct under Government Code §815.2; and said conduct is not immunized, including by Government Code §820.21.

95.     As a result of the conduct of said Defendants, and each of them, as adopted by incorporated by paragraphs previously set forth herein, Defendants and each of them, violated Plaintiffs' personal and civil rights, including the right of protection from unwarranted and unlawful seizure, bodily restraint or harm, from personal and physical

insult and violation, from defamation and from injury to personal relation, as set forth in California Civil Code §43, including by, but not limited to, by interfering, by threats, intimidation, or coercion, or attempts thereto, in the exercise and enjoyment of Plaintiffs' rights secured by the United States Constitution, other Federal laws, and the Constitution and laws of the State of California (conduct not immunized by California's Government Code § 820.21 and federal law), under color of law and by the use of fabrication of evidence, failure to disclose exculpatory evidence, and by obtaining and/or attempting to obtain, evidence and testimony by duress, fraud and undue influence.  (Pursuant to *Venegas v. County of Los Angeles* (2004) 32 Cal. 4th 820, Plaintiffs are not required to make a showing of discriminatory intent or show that they are members of a protected classification to exercise these rights).

96.   The acts of Defendants that are previously alleged in this Complaint, and incorporated by the references herein to the extent applicable, interfered, or attempted to interfere, with the exercise of Plaintiffs' personal and civil rights under the laws and Constitution of the State of California, including the Plaintiffs' rights of privacy and those rights under Civil Code § 43, as well as the laws and the Constitution of the United States, as stated herein.

97.   As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiffs have suffered and will continue to suffer damages, including but not limited to, great emotional and psychological distress, humiliation and mental anguish, the nature and amount of which will be shown according to proof at trial.

98.   These violations of the Plaintiffs' personal and civil rights by Defendants, and Does 1 through 50, Inclusive, and each of them, are protected and guaranteed by California Civil Code § 52.1 entitling Plaintiffs to damages and relief, including damages under California Civil Code § 52, other equitable relief, punitive damages, injunctive relief,  statutory civil penalty (including $25,000.00 as to each individual Defendant) and attorneys' fees, (pursuant to CC § 52.1(h)), all of which are requested

herein.

99.     In doing the acts alleged in this Complaint, Defendants, and each of them, knew or should have known, that their actions were likely, or would, to injure and damage Plaintiffs, and Plaintiffs are informed and believe, and thereon allege, that the individual Defendants, and each of them, intended to cause injury and damage to Plaintiffs, and/or acted with a willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to recover punitive damages as against said individual Defendants.

**<u>EIGHTH CAUSE OF ACTION VIOLATION OF STATE CIVIL RIGHTS §52.1</u>**

**<u>AGAINST ALL DEFENDANTS - By All Plaintiffs</u>**

100.     Plaintiffs reallege, adopt and incorporate as if set forth at length, and to the extent applicable, paragraphs 1 through 99 herein.

101.     All Individual Defendants, and Does 1 through 50, Inclusive, are individuals who were acting under color of law in conducting an investigation and proceedings pursuant to California law, including as to proceedings described in Government Code § 820.21(a).

102.     To the extent not separately responsible, Defendant COUNTY is vicariously responsible for these Defendants' conduct under Government Code § 815.2; and said conduct is not immunized, including by Government Code §820.21.

103.     As a result of the conduct of said Defendants, and Does 1 through 50, Inclusive, as adopted and incorporated by paragraphs previously set forth herein, Defendants and each of them, have violated Plaintiffs' rights by interfering with Plaintiffs' rights by threats, intimidation, or coercion, or attempts thereto, including to force Plaintiffs to conform to their demands, and in retaliation of Plaintiffs' exercise of their rights, causing the violation and interference with the exercise or enjoyment of Plaintiffs' rights secured by the laws and Constitution of the United States, and the Constitution and laws of the State of California, including by using fabricated evidence, failure to disclose exculpatory evidence, and by obtaining and/or attempting to obtain, evidence and testimony by duress, fraud and undue influence, in juvenile

dependency investigations and proceedings.

104.    As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiffs have suffered and will continue to suffer damages, including great emotional and psychological distress, humiliation and mental anguish, the nature and amount of which will be shown according to proof at trial.

105.   These violations of the Plaintiffs' rights by Defendants, and Does 1 through 50, Inclusive, and each of them, are guaranteed and protected by Civil Code §52.1 entitling Plaintiffs to damages and relief, including compensatory and punitive damages, other equitable relief, injunctive relief, statutory civil penalty (including $25,000.00 as to each individual Defendant) and attorneys' fees, all of which are requested herein.

106.    In doing the acts alleged in this Complaint, Defendants, and each of them, knew or should have known, that their actions were likely, or would, to injure and damage Plaintiffs, and Plaintiffs are informed and believe, and thereon allege, that the individual Defendants, and each of them, intended to cause injury and damage to Plaintiffs, and/or acted with a willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to recover punitive damages as against said individual Defendants.

## **PRAYER**

WHEREFORE, Plaintiffs request trial by jury and pray judgment against the Defendants as follows:

First Cause of Action ASSAULT AND BATTERY - By minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  Plaintiffs Against ALL Defendants, and Does 1 through 50, Inclusive

1.    General damages in an amount to be determined by proof at trial.

2.    Medical and related expenses in an amount to be determined by proof at trial.

3.    Punitive damages as against the individual defendants.

4.    Costs of this action.

5.    Interest according to law.

6.      Any other and further relief that the Court considers proper.

Second Cause of Action BATTERY - By minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M. Plaintiffs Against ALL Defendants, and Does 1 through 50, Inclusive

1.      General damages in an amount to be determined by proof at trial.

2.      Medical and related expenses in an amount to be determined by proof at trial.

3.      Punitive damages as against individual defendants only.

4.      Costs of this action.

5.      Interest according to law.

6.      Any other and further relief that the Court considers proper.

Third Cause of Action FALSE IMPRISONMENT - By minors  N.G.P.M., M.N.A.M., M.C.G.M, and N.E.H.M.  Plaintiffs Against ALL Defendants, and Does 1 through 50, Inclusive

1.      General damages in an amount to be determined by proof at trial.

2.      Medical and related expenses in an amount to be determined by proof at trial.

3.      Punitive damages as against individual defendants only.

4.      Costs of this action.

5.      Interest according to law.

6.      Any other and further relief that the Court considers proper.

Fourth Cause of Action VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §§ 1983 AND 1985 - By Plaintiffs Against All  Individual Defendants, and Does 1 through 50, Inclusive

1.      General damages in an amount to be determined by proof at trial.

2.      Medical and related expenses in an amount to be determined by proof at trial.

3.      Punitive damages as against individual defendants only.

4.   Attorney fees, costs and expenses as authorized by 42 U.S.C. § 1988 according to proof.

5.   Interest according to law.

6.   Costs of this action.

7.   Any other and further relief that the Court considers proper.

Fifth  Cause of Action - MONELL RELATED CLAIMS

By Plaintiffs Against the COUNTY and H.H.S.A..

1.   General damages in an amount to be determined by proof at trial.

2.   Medical and related expenses in an amount to be determined by proof at trial.

3.   Attorney fees, costs and expenses as authorized by 42 U.S.C. § 1988 according to proof.

4.   Interest according to law.

5.   Costs of this action.

6.   Any injunctive and other and further relief that the Court considers proper.

Sixth Cause of Action - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - By Plaintiffs Against All Defendants

1.   General damages in an amount to be determined by proof at trial.

2.   Medical and related expenses in an amount to be determined by proof at trial.

3.   Punitive damages as against individual defendants only.

4.   Costs of this action.

5.   Interest according to law.

6.   Any other and further relief that the Court considers proper.

Seventh Cause of Action VIOLATION OF STATE CIVIL RIGHTS (UNDER CALIFORNIA CIVIL CODE § 43) AGAINST ALL DEFENDANTS - By All Plaintiffs

1.   General damages in an amount to be determined by proof at trial.

2.     Medical and related expenses in an amount to be determined by proof at trial.

3.     Punitive damages as against individual defendants only.

4.     Attorney fees, costs, penalties and expenses as authorized by law according to proof.

5.     Interest according to law.

6.     Costs of their action.

7.     Any other and further relief that the Court considers proper.

Eighth  Cause of Action VIOLATION OF STATE CIVIL RIGHTS §52.1 AGAINST ALL DEFENDANTS - By All Plaintiffs

1.     General damages in an amount to be determined by proof at trial.

2.     Medical and related expenses in an amount to be determined by proof at trial.

3.     Punitive damages as against individual defendants only.

4.     Attorney fees, costs, penalties and expenses as authorized by law according to proof.

5.     Interest according to law.

6.     Costs of this action.

7.     Any injunctive and other and further relief that the Court considers proper.

DATED: April 7, 2011            LAW OFFICE OF DONNIE R. COX

/s/ Donnie R. Cox

DONNIE R. COX, Attorney for Plaintiffs
MARK  MANN;  MELISSA  MANN;  N.G.P.M.,
M.N.A.M., M.C.G.M, and N.E.H.M.
minors by and through their Guardian Ad Litem,
BRUCE PAUL

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Mark Mann, Melissa Mann, (see attached for additional plaintiffs) | County of San Diego, (see attached for additional defendants) |

| (b)  County of Residence of First Listed Plaintiff   San Diego | County of Residence of First Listed Defendant   San Diego |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c)  Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Donnie R. Cox, Law Office of Donnie R. Cox, 402 North Nevada St., Oceanside, CA  (760) 400-0263 (see attached for additional) | '11CV0708 AJB  BGS |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 1983

Brief description of cause:
Violation of civil rights,  Monell Based claim, pendant State claims.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
04/07/2011

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

<u>Attachment to Civil Case Coversheet</u>

Additional Attorneys:

Dennis B. Atchley,, Law Office of Donnie R. Cox, 402 North Nevada Street, Oceanside, CA 92054-2025 (760) 400-0263

Paul W. Leehey, Law Office of Paul W. Leehey, 210 E. Fig Street, Ste. 101, Fallbrook, CA 92028 (760) 723-0711

Additional Plaintiffs:

N.G.P.M., a minor; M.N.A.M., a minor; M.C.G.M., a minor; and N.E.H.M, a minor, by and through their Guardian Ad Litem, Bruce Paul

Additional Defendants:

COUNTY OF SAN DIEGO; SAN DIEGO COUNTY HEALTH AND  HUMAN SERVICES AGENCY;  POLINSKY CHILDRENS CENTER; ANDREA E. CISNEROS; LISA J. QUADROS; ANGELA REDMOND;  GILBERT FERRO; DEBBIE  BAYLISS; LEELA JOSEPH; NANCY  GRAFF, M.D.; NONI MATIONG; KELLY MONGE;  SOPHIA SANCHEZ; SUSAN SOLIS; and Does 1 to 50.