Donnie R. Cox, SBN 137950
LAW OFFICE OF DONNIE R. COX
402 North Nevada St.
Oceanside, CA92054-2025
Telephone (760) 400-0263
Facsimile (760) 400-0269
drc@drcoxlaw.com

Paul W. Leehey, SBN 92009
LAW OFFICE OF PAUL W. LEEHEY
210 E. Fig Street, Ste. 101
Fallbrook, CA 92028-2002
Telephone (760)723-0711
Facsimile (760) 723-6533
law@leehey.com

Robert Hamparyan, Esq. SBN: 181934
LAW OFFICES OF ROBERT HAMPARYAN
275 West Market Street
San Diego, CA 92101
Telephone: (619) 550-1355
Facsimile (619) 550-1356
Robert@hamparyanlawfirm.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MANN; MELISSA MANN; N.G.P.M., a minor; M.N.A.M. a minor, M.C.G.M. a minor; and N.E.H.M. a minor by and through their Guardian Ad Litem, BRUCE PAUL<br><br>          Plaintiffs,<br><br>     v.<br><br>COUNTY OF SAN DIEGO; et al,<br><br>          Defendants. | Case No. 11CV0708 GPC (BGS)<br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>**Motion Date:  August 7, 2015**<br>**Time:   1:30 p.m.**<br>**Courtroom:  2D**<br>Judge        : Hon. Gonzalo P. Curiel<br>Magistrate: Hon. Bernard G. Skomal<br><br>Trial Date:   None |

---

**Plaintiffs' Opposition to Motion for Summary Judgment      Case No. 3:11cv0708GPC(BGS)**

TABLE OF CONTENTS

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

        A.      Introductory Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Court's August 8, 2013 Order . . . . . . . . . . . . . . . . . .. . . . . . . . . 3

        C.      Fierro Was An Active Participant in the Preparation of the Warrant

        Application and Detention Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        D.      Monge and Solis Continued to Omit Material Facts From the

        Court During the Jurisdiction Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    Summary Judgment Must Not Be Granted Where There is A Genuine

        Dispute As to Any Material Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     Defendants Are Not Entitled To Qualified Immunity On the First Amendment

        Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.      Due to His Participation In the Process Leading To The Removal of The

        Mann Children, Summary Judgment Is Improper As to Defendant Fierro . .12

        A.      Fierro is Subject to Liability Under Section 1983 . . . . . . . . . . . . . 13

        B.      Fierro is not Entitled to Immunity on the State Law Claims . . . . . . . 15

        C.      Fierro Participated in the Assault, Battery, and False Imprisonment of

        the Mann Children . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        D.      Fierro's Actions Were Sufficiently Outrageous to Support Plaintiffs'

        Claim for Intentional Infliction of Emotional Distress. . . . . . . . . . . . . . . .17

        E.      Due to his Participation in Plaintiffs' Constitutional Violations,

        Fierro is Liable Under Civil Code Section 52.1. . . . . . . . . . . . . . . . . . 18

VI.     Defendant Monge and Solis Failed To Disclose Known Exculpatory

        Information to the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.      Defendants Monte and Solis Are Liable to Plaintiffs for Their

        Violation of Plaintiffs' Constitutional Rights. . . . . . . . . . . . . . . . . . . . . 19

i

B.   Defendant Monge and Solis Cannot Claim State Law Immunity.... 20

C.   Defendants Monge and Solis' Actions Support Plaintiffs' Claim for Intentional Infliction of Emotional Distress. . . . . . . . . . . . . . . . . . . . . . . .20

D.   Monge and Solis' Actions Damaged the Mann Family's Relationships . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

VII.   Plaintiffs Are Not Required To Show Threats, Intimidations or Coercion Separate and Apart From The Underlying Civil Rights Violation To Establish Their Claims under Civil Code Section 52.1 . . . . . . . . . . . . . . . . . . . . . . . .21

VIII.  The Individual Defendants Are Liable For All Harm To the Mann Family That Was Foreseeably Caused By Defendants' Wrongful Conduct, Including The Harm Caused By The Unconstitutional, Unauthorized, Or Unwarranted Physical Examinations At Polinsky Childrens Center . . . . . . . . . . . . . . . . . .22

1X.   Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

Plaintiffs' Opposition to Motion for Summary Judgment        Case No. 3:11cv0708GPC(BGS)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**U.S. CONSTITUTIONAL AMENDMENTS**

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 11, 18,

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 7, 11, 14, 19

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . 5, 6, 11

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Aydin Corp. v. Loral Corp.,* 718 F.2d 897 (9th Cir.1983) . . . . . . . . . . . . . . . . . . . 6

*Beck v. City of Upland*, 527 F.3d 853 (9th Cir.2008) . . . . . . . . . . . . . . . .. . 9, 10, 13,

*Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir.2006) . . . . . . . . . . . . . . . . . . . . .19

*Burke v. County of Alameda*, 586 F.3d 725 (9th Cir.2009) . . . . . . . . . . . . . . . . . . 19

*Celotex Corp. v. Catrett*, 477 US 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . 12

*Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990) . . . . . . . .. . 8, 9, 10, 12, 23

*D.V. v. City of Sunnyvale*, 65 F.Supp.3d 782 (N.D.Cal. 2014) . . . . . . . . . . . . . .18, 21

*Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . .10, 11

*Jeffers v. Gomez,* 267 F.3d 895, 915 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . .14

*Hansen v. Black*, 885 F.2d 642 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pearson v. Callahan*, 555 US 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Preschooler II v. Clark County School Bd. Of Trustees*, 479 F.3d 1175 (9th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shoyeye v. County of Los Angeles*, 203 Cal.App.4th 947 (2012) . . . . . . . . . . . . . 21

*Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir.2006). . . . . . . . . . . . . 7, 10

*Tatum v. Moody*, 768 F.3d 806 (9th Cir.2014) . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Taylor v. List,* 880 F.2d 1040 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*U.S. v. Lanier*, 520 U.S. 259 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 11

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . 11, 19

**Plaintiffs' Opposition to Motion for Summary Judgment       Case No. 3:11cv0708GPC(BGS)**

*Yun Hee So v. Sook Ja Shin*, 212 Cal.App.4th 652(2013). . . . . . . . . . . . . . .   16, 18

**STATE CASES**

*Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860 (2007). . . . . . . 17

*Dillon v. Legg*, 68 Cal.2d 728. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*D.V. v. City of Sunnyvale*, 65 F.Supp.3d 782 (N.D.Cal. 2014) . . . . . . . . . . .   18, 21

*Marsh v. San Diego County*, 432 F.Supp.2d 105 (SD Cal.2006) . . . . . . . . . . . . . 17

**FEDERAL RULES OF CIVIL PROCEDURE**

FRCP 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

**CALIFORNIA CIVIL CODE**

43. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 20, 21

47. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,20

52.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 20, 21,22, 24

**GOVERNMENT CODE**

820.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 16, 20

820.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

820.21. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 20

821.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 16, 20

**UNITED STATES CODE**

42 USC Section 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Plaintiffs' Opposition to Motion for Summary Judgment      Case No. 3:11cv0708GPC(BGS)

Plaintiffs Mark Mann and Melissa Mann ("the Mann Parents"), and NGPM, MNAM, MCGM, and NEHM, minors, by and through their Guardian ad Litem, Bruce Paul, ("the Mann Children") (collectively referred to herein as "Plaintiffs" or "the Mann Family") respectfully submit the following Memorandum of Points and Authorities in opposition to Defendants' Supplemental Motion for Summary Judgment:

# I.

## INTRODUCTION

Defendants seek summary adjudication of the following discrete issues:

- Qualified immunity on Plaintiffs' First Amendment retaliation claim;
- All claims against Defendant Gilbert Fierro ("Fierro");
- All claims against Defendants Kelly Monge ("Monge") and Susan Solis ("Solis");
- Plaintiffs' Civil Code §52.1 claim against Defendants Andrea Hernandez ("Hernandez")[1] and Lisa Quadros ("Quadros");
- All claims against the individual Defendants arising out of the examinations of the Mann Children at the County of San Diego's Polinsky Children's Center.

Defendants claim that Plaintiffs' First Amendment right to be free from retaliation was not clearly established "in the context of social workers removing children from their parents' care." Their claim is absurd and flies in the face of common sense. The right to be free from retaliatory government action *in the absence of probable cause,* under any circumstance, has been well established in this Circuit for 25 years. Defendants are not entitled to qualified immunity on Plaintiffs' First Amendment retaliation claim.

---

[1] Andrea Hernandez was formerly known as Andrea Cisneros.

1

The evidence, and the reasonable inferences arising from that evidence, clearly support Plaintiffs' claims against Defendants Fierro and against Defendants Monge and Solis. Fierro participated in the initial contacts with the Mann Family and was actively involved in the decision-making process leading to the wrongful removal of the Mann Children from their home.

Although assigned to the Mann Family's case after the Mann Children had been removed from their home, Defendants Monge and Solis continued to hide known exculpatory evidence from the Court. A reasonable jury could infer that this failure to disclose the exculpatory evidence was intended to further the retaliation against the Manns or to "cover up" the misconduct of Defendants Hernandez, Quadros and Fierro. None of these Defendants is entitled to summary judgment on the claims against them.

Nor are Defendants entitled to summary judgment on Plaintiffs' Civil Code §52.1 claim. Defendants' claimed basis for summary judgment is grounded in misconduct that is negligent rather than intentional. Here, Plaintiffs' claims against Hernandez and Quadros are that they acted intentionally and with malice. Plaintiffs have made a sufficient showing to overcome summary judgment on this claim.

Last, Plaintiffs may claim damages, particularly in the context of their state law claims, as a result of the unlawful conduct of the individual County Defendants, including the physical examinations at Polinsky Children's Center ("PCC") that would not have occurred but for the removal of the children based on the defective warrant.

## II.

## STATEMENT OF FACTS

A.    <u>Introductory Statement</u>

The parties have previously provided full factual backgrounds, with supporting evidence, in their August 2013 motions for summary judgment.

Plaintiffs refer the Court to those motions (Documents 80-1 and 77-1).[1] The

statement of facts for this opposition will only include those facts upon which this

opposition is based.

This case arises out of the County's removal of the Mann Children from their

home. The incident which caused the County to remove the Mann Children was

Mark Mann's misplaced swat intended for the buttocks of one of his 4-year-old

triplets. The swat left a red mark on his daughter's lower back.

B.   Court's August 8, 2013 Order

On August 8, 2013, this Court entered its order on the parties' cross motions

for summary judgment and/or partial summary judgment. In this order, the Court

found that facts omitted from the Detention Report and Warrant Application

regarding the Mann Parents' cooperation and Melissa Mann's complaints about

Defendant Hernandez "were material to the Juvenile Court's decision to issue the

protective custody warrant and should have been included." (Document 102, 19:10-

11)  This Court cited several examples of critical information omitted from the

report, and found that "had the omitted information been included, the Detention

Report and Warrant Application would not have supported a finding of probable

cause." (Document 102, 19:25-26) This Court held that the only issue to be decided

on the Fourth and Fourteenth Amendment violations of the Plaintiffs' rights was

whether Hernandez and Quadros intentionally or recklessly omitted these material

facts. *Thus, this Court has already found that there was no probable cause to

remove the Mann Children from their parents*. This is a critical backdrop to the

issues raised by Defendants. This Court has established that Defendants are not

entitled to summary judgment for Defendants' violations of Plaintiffs' Fourth and

Fourteenth Amendment rights.

---

[1]  Plaintiffs incorporate by reference herein their previously submitted and filed arguments on the
issues addressed in this motion. See Documents 80, 80-1 to 21, 82, 97-1 to 4, 100, 100-1 to 3, and
161.

3

C.     <u>Fierro Was an Active Participant in the Preparation of the Warrant Application and Detention Report</u>

Defendant Fierro was Defendant Quadros' manager (Quadros was Hernandez' supervisor). (SSUF 1) Between April 6 and April 16, 2010, Hernandez had several conversations with Fierro regarding the Mann case. These conversations took place *before* Hernandez drafted the application for the protective custody warrant. (SSUF 2) During these conversations, Hernandez and Fierro discussed the complaint made by Melissa Mann against Hernandez. (SSUF 3)

Fierro actually spoke with Melissa Mann to discuss her complaints about Hernandez and the way the County was handling the situation. (SSUF 4) After that conversation*, all decisions made by Hernandez were made in consultation with Quadros and Fierro.* (SSUF 5) Fierro was involved in the meeting concerning the warrant application. (SSUF 6) Quadros testified that she specifically recalls consulting with Fierro about the Mann Family and the interactions between the family, her and Hernandez. (SSUF 7) As a result of that meeting, Hernandez, Quadro and Fierro came to a "consensus" to pursue the protective custody warrant. (SSUF 8) On the basis of the falsified protective custody warrant application, the court issued a warrant to remove the Mann Children from their parents' custody. (SSUF 8)

Although Defendants were required to enter details of their interactions with the Mann Family and each other in the Delivered Service Log ("DSL"), none of these discussions, including Fierro's conversation with Ms. Mann, is noted in the DSL. (SSUF 9)

D.     <u>Monge and Solis Continued to Omit Material Facts from the Court during the Jurisdiction Proceedings</u>

Monge received the Mann file on April 19, 2010. (SSUF 10) She spoke with Hernandez concerning the case. (SSUF 11)  She then reviewed the entire DSL.

4

1  (SSUF 12) Solis, Monge's supervisor, also reviewed the entire DSL, and the

2  Detention Reports and addendums thereto. (SSUF 13)

3      It appeared to Monge from her review of the DSL that Ms. Mann had been

4  very cooperative with Hernandez. (SSUF 14) Monge had also reviewed the

5  Detention Report, and knew it did not include information concerning Ms. Mann's

6  objection to Hernandez's conduct, or Ms. Mann's discussions with Quadros and

7  Fierro about how to handle her complaints. (SSUF 15) Monge knew that many of

8  the instances of the Mann Family's cooperation and attempts to resolve her

9  complaints with the County were omitted from the reports. (SSUF 16)

10     Although she understood that the Warrant Application was based on an

11 allegation that the Mann Family was non-cooperative and hostile to the agency,

12 everything in the DSL showed that the Mann Parents had been cooperative and

13 non-hostile, and that Ms. Mann had followed County protocols and procedures

14 concerning her complaints about Hernandez. (SSUF 17)

15     It is *undisputed* that County policy dictated that all reports to the court must

16 be fair, complete and accurate. (SSUF 18)

## III.

### SUMMARY JUDGMENT MUST NOT BE GRANTED WHERE THERE IS A GENUINE DISPUTE AS TO ANY MATERIAL FACT

20     The basic standard for granting summary judgment is that the court must find

21 there is "no genuine dispute as to any material fact and that the movant is entitled to

22 judgment as a matter of law." FRCP 56(a).  Rule 56 must be construed with regard

23 to the rights of persons asserting claims that are adequately based in fact to have

24 them tried to a jury. *Celotex Corp. v. Catrett*, 477 US 317, 327 (1986) Trial courts

25 should act with caution in granting summary judgment. *Anderson v. Liberty Lobby,*

26 *Inc.*, 477 US 242, 255 (1986)

27

28

When the facts controlling the application of a rule of law are undisputed, the application raises a question of law for the court. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)

However, summary judgment cannot be granted where there is a "genuine dispute" as to any "material fact." FRCP 56(a). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, supra,* 477 US at 248. If the opposition evidence could cause reasonable persons to disagree on whether the facts claimed by the moving party are true, a jury must resolve the parties' differing versions of the truth. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.1983) The court must view the evidence in the light most favorable to the opposing party: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, *supra*, 477 US at 255.

## IV.

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON THE FIRST AMENDMENT RETALIATION CLAIM

Defendants contend that the individual defendants are entitled to qualified immunity on Plaintiffs' claim that the social workers' decision to remove and continue to detain the Mann Children in retaliation for Melissa Mann's, and to a certain extent Mark Mann's, complaints about the Defendants actions violated Plaintiffs' First Amendment rights.[1]

The question of whether summary judgment is proper on the affirmative defense of qualified immunity requires the application of a three part test: 1) do the facts alleged show the defendants' conduct violated a constitutional right?; 2) was that right clearly established at the time of defendants' actions?; and 3) would it be

---

[1]  This Court has already found that Defendants are not entitled to qualified immunity for their violation of Plaintiffs' Fourth and Fourteenth Amendment rights in connection with obtaining and executing the protective custody warrant and detention report. (Document 102, 19:25-26)

clear to a reasonable official that his/her conduct was unlawful? *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir.2006).

The first prong is satisfied. This Court has already found there was no probable cause for the protective custody warrant due to Defendants' omissions in the Detention Report and Warrant Application, and that genuine issues of fact remain as to whether those omissions were intentional or reckless. (Document 102, 19:25-20:8)Thus, Defendants' violation of Plaintiffs' Fourth and Fourteenth Amendment rights is established for the purposes of this motion.

Moving on to the second and third prongs of the test (was the right clearly established and would it be clear to a reasonable official that her conduct was unlawful), Defendants pose the question: Was it clearly established that Plaintiffs had the "right to be free from a *request by social services*,"[1] *(emphasis supplied)* in retaliation for the parents making critical statements about the workers, to remove children from their parents' care without possessing facts to support probable cause"? (Document 194-1, 8:2-5)

However the proper question is: would *a government official* know that they could not retaliate against an individual for that individual's exercise of his or her First Amendment right *absent probable cause*.

The answer to this question is a resounding "YES!" In fact, there is NO case law to the contrary! In **every** case cited by Defendants, the court found there was also probable cause (and thus no independent constitutional violation) to arrest or prosecute the individuals who brought the action.

In *Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011), the court held that "*an objectively reasonable arrest and detention* of a material witness pursuant to a *validly obtained warrant* cannot be challenged as unconstitutional on the basis of

---

[1]  The Court should note that the Defendants have framed this question in innocuous language (right to be free from a "request") in order to shield the true nature of the actions alleged by the Plaintiff's in this case.

7

allegations that the arresting authority had an improper motive." *Id*. at 2085 (emphasis supplied).

In *Reichle v. Howards*, 132 S.Ct. 2088 (2012), the court held "when Howards was arrested it was not clearly established that an arrest *supported by probable cause* could give rise to a First Amendment violation." *Id*. at 2097 (emphasis supplied). Defendants rely heavily on the *Reichle* decision, and specifically the language that the right allegedly violated must be established "not as a broad general proposition." *Id*. at 2094. However, as the Court stated, "Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest *that is otherwise supported by probable cause*." *Ibid* (emphasis supplied). In the present case, unlike *Reichle*, *there is no probable cause.*

And in *Pearson v. Callahan*, 555 US 223 (2009), the court held that officers were entitled to qualified immunity where they believed they were entitled to enter a home without a warrant under the "consent-once-removed" doctrine, *which established probable cause. Id*. at 225.

As stated previously, and at this point redundantly, the Court has already found *the absence of probable cause*. It was abundantly clear to Defendants that they could not remove the Mann Children from their parents' care without possessing facts to support probable cause. Further, there were no "exigent circumstances" justifying the removal without a warrant. That was the reason that they applied for the warrant in the first place.

The authority is overwhelming *and singular*: A government official may not retaliate against an individual for exercising his or her First Amendment rights absent probable cause.

In the seminal case in this area, *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990), Ralph Duran directed a series of expletives and an obscene hand gesture at Gilbert Aguilar, an Arizona Police officer. Aguilar responded by detaining and

arresting Duran. Duran claimed that Aguilar stopped his car in retaliation for the insult. No other reason was given for the stop by the officer.   "If true, this would constitute a serious First Amendment violation. . . . [W]hile police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Id*. at 1378.

The court found that Aguilar had no "legitimate, articulate reason" to detain Duran despite Duran's "boorish, crass" behavior. *Id*. at 1377. In other words, there was *no probable cause*. The court also found there to be a material issue of fact as to whether Aguilar "intended to hassle Duran as punishment for exercising his First Amendment rights. To the extent the trier of fact determines that officer Aguilar stopped Duran in retaliation for Duran's method of expressing his opinion, this would constitute a separate constitutional violation that could form the basis of liability under section 1983." *Id*. at 1378.

As for the question of whether "the rights here in question were so clearly established that officer Aguilar should have known he was acting illegally when he initiated the traffic stop," the court stated: "No less well established is the principle **that government officials**. . .may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. **Surely anyone who takes an oath of office knows—or should know—that much**." *Ibid* (emphasis supplied).

In *Beck v. City of Upland*, 527 F.3d 853 (9th Cir.2008), Beck was arrested several days after he confronted two city police officers over what he felt to be unfair treatment by the City of Upland concerning the award of a contract. Like this case, the warrant leading to Beck's arrest was based upon a falsified report. The court found there was no probable cause to arrest Beck (*Id*. at 866), and a rational jury might find that his arrest was retaliatory. *Id*. at 869.

9

The *Beck* court further found that the "pertinent law was clearly established at the time of the incidents in this case." *Id*. at 871.  Citing to *Duran, supra,* the court found that by 1990, "arresting someone in retaliation for their exercise of free speech rights was violative of law clearly established" (*Id*. at 871), and that "well before 2004, 'a reasonable **official** [in Sergeant Mendenhall's position] would understand' that arresting an individual in retaliation for protected speech is constitutionally impermissible (citation omitted). Such an officer would also have known that the **warrant application and criminal complaint were objectively unsupported by probable cause**." *Id.,* at 871 (emphasis supplied).

More recently, in *Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013), the court found police officers who booked and jailed Eddie Ford because he "wouldn't shut up," were not entitled to qualified immunity. The court stated that "at the time the officers acted in 2007, the law in this Circuit gave fair notice that it would be unlawful to jail Ford in retaliation for his First Amendment activity."

"Thus, *Duran* clearly established that police officers may not use their authority to punish an individual for exercising his First Amendment right, while *Skoog* clearly established that a police action motivated by retaliatory animus was unlawful, even if probable cause existed for that action. The officers' conduct in this case falls squarely within the prohibitions of *Duran* and *Skoog*. While the precise issue of retaliatory booking and jailing has not been addressed in this Circuit, "closely analogous preexisting case law is not required to show that a right was clearly established. . . [T]his case involved the kind of 'mere application of settled law to a new factual permutation' in which we assume an officer had notice that his conduct was unlawful.' " *Id*. at 1196.

Similar to *Ford*, Defendants here argue there is no case law that specifically applies to the retaliatory actions of a "child welfare services agency." This level of specificity is not required. "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances. (Citations omitted). The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional. (Citations omitted)." *Id.* at 1195.

> "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful," *Anderson, supra,* at 640, 17 S.Ct. at 3039. As Judge Daughtrey noted in her dissenting opinion in this case: "'The easiest cases don't even arise. There has never been … a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability.'" *U.S. v. Lanier*, 520 U.S. 259, 271 (1997)

There is no question that agents of a "child welfare services agency" must abide by the basic constitutional provisions of the Fourth and Fourteenth Amendment. *See, e.g., Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir.1999) Further, as this court has already pointed out, it was clear at the time the Defendants signed the warrant application and petition in this case that they could not fabricate evidence in a juvenile court proceeding.  (Documents 102, 22:7-10) Under these circumstances, to find that "the law was not clear" that these actions were in retaliation for the Plaintiffs' exercise of their First Amendment rights, not only makes no sense, but gives license to these "government officials" to threaten

retribution against those who simply dare to question their authority, *even when there is no probable cause* to tear children from their parents' arms.

As the *Duran* court made clear, "**government officials**" may not exercise their authority for personal motives, and **"anyone who takes an oath of office knows—or should know—that much**." *Id.,* at 1378. Ninth Circuit law gave Defendants "fair warning" that they could not retaliate for Melissa Mann's exercise of her First Amendment right to free speech, particularly in the absence of probable cause.

To summarize the Defendants' argument: It wasn't clear that social workers could not retaliate against the Mann family (without probable cause) merely because they didn't like the way they were being criticized by Melissa Mann.

To say that the Defendants' motion on this point is "without merit" hardly describes the ridiculousness of their logic. Defendants' motion for summary judgment on the question of qualified immunity for Plaintiffs' First Amendment retaliation claim must fail.[1]

## V.

### DUE TO HIS PARTICIPATION IN THE PROCESS LEADING TO THE REMOVAL OF THE MANN CHILDREN, SUMMARY JUDGMENT IS IMPROPER AS TO DEFENDANT FIERRO

Defendants state that none of Plaintiffs' claims against Fierro are viable. However, due to his active participation in the interactions with the Mann Parents and preparation of the Detention Report and Warrant Application, Fierro is most definitely subject to all claims asserted against him.

---

[1] Although Defendants do not address this in their motion, Plaintiffs also base their State Law Claims for Assault and Battery, False Imprisonment, Intentional Infliction of Emotional Distress, and Violations of §43 and 52.1 in part on their retaliation claim. The doctrine of qualified immunity does not shield defendants from state law claims. *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir.2009)

A.    <u>Fierro is Subject to Liability Under Section 1983</u>

In *Beck v. City of Upland, supra*, the court held that a "supervising official may be liable in his official capacity if he 'set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury.'" *Id.* at 871. In *Beck*, the police chief approved his officer's investigation of the incident in question and told him to present it to the prosecutor. "It should have been clear to Thouvenell from the start that there was no probable cause to arrest Beck. Yet, he failed to do anything to stop the process that led to the arrest." *Ibid.*

Here, Fierro spoke with Melissa Mann concerning the difficulties she was experiencing with Hernandez, even though he failed to document that conversation in the DSL. (SSUF 4, 9) He was aware of her cooperation with the agency, and of the fact that she simply wished a more experienced social worker to be assigned to the case to ensure that the family was receiving the necessary services. (SSUF 4) In addition, Fierro participated in at least one and possibly two meetings concerning the Mann Family. (SSUF 2, 6)

Lastly, and most importantly, Fierro *was involved in the decision to remove and detain the children*.  (SSUF 8) Although he now denies any knowledge of the report or its contents (SSUF 19), there is ample contradictory evidence to create a question of fact as to whether Fierro knew, or reasonably should have known, that Hernandez and Quadros had prepared a report that omitted material facts, including conversations between him and Ms. Mann.

The authority cited by Defendants actually *supports the claims against Fierro*. In *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989), the court held that where there is a showing of personal participation by the defendant, liability under section 1983 may be established, and that a supervisor may be liable for the constitutional violations of his subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."

13

*Ibid.* Two of the supervisory defendants in *Taylor* were "figurehead" defendants (i.e. the Attorney General for the State of Nevada and the Director of Prisons) who did not participate in any way in the alleged misconduct. However, the court found that Taylor <u>did</u> defeat summary judgment on his claims against the acting captain of the prison's maximum security facility, because the evidence "tended to show personal participation in" the alleged violations. *Ibid.*

In *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir.2001), the court held that a supervisor may be liable under section 1983 if he is personally involved in the constitutional deprivation or there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Similar to *Taylor*, the plaintiff in *Jeffers* asserted a claim for supervisory liability against the California Director of Prisons, who had no direct involvement or even direct management responsibility over the employees involved in the claimed misconduct.[1] By contrast, in the case at bar the evidence shows that Fierro was personally involved in the constitutional deprivation, and had direct management responsibility over Hernandez and Quadros.

And in *Preschooler II v. Clark County School Bd. Of Trustees*, 479 F.3d 1175 (9th Cir.2007), the court denied qualified immunity to a number of school officials because the evidence showed they disregarded their responsibilities. The court held that supervisory liability may be imposed under §1983 where the supervisor "does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. . . . The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.* at 1183.

---

[1]  *Hansen v. Black*, 885 F.2d 642 (9th Cir.1989) also involved claims against a police chief with no personal involvement in the incident.

1  Here, not only was Fierro an active participant in the events leading up to the
2  detention of the Mann Children, *but he was one of the people involved in the*
3  *consensus decision to submit the falsified Warrant Application,* thus setting into
4  motion the series of events that led to the violation of the constitutional rights of the
5  Mann Family. Fierro is not entitled to summary judgment on Plaintiffs' section
6  1983 claim.

7  B.   Fierro is not Entitled to Immunity on the State Law Claims

8  Fierro claims he is entitled to immunity from liability on the state law claims
9  because his decisions involved the use of discretion (Government Code §820.2) and
10  because his decision initiated a judicial proceeding (Government Code §821.6).
11  Fierro's actions are not protected by either immunity.

12  The statutory privileges claimed by Fierro are overcome by California
13  Government Code §820.21, which provides:

14  "(a) Notwithstanding any other provision of law, the civil immunity of
15  juvenile court social workers, child protection workers, and other
16  public employees authorized to initiate or conduct investigations or
17  proceedings pursuant to [the Welfare and Institutions Code] shall not
18  extend to any of the following, if committed with malice:

19  (1) Perjury.

20  (2) Fabrication of evidence.

21  (3) Failure to disclose known exculpatory evidence.

22  (4) Obtaining testimony by duress . . .

23  (b) . . . "malice" means conduct that is intended by the person
24  described in subdivision (a) to cause injury to the plaintiff or
25  despicable conduct that is carried on by the person described in
26  subdivision (a) with a willful and conscious disregard of the rights or
27  safety of others."

28

15

As discussed above, Fierro was involved in the decisions that led to the removal and detention of the Mann Children. He was well aware of exculpatory evidence that should have been included in the report, but was part of the consensus decision to remove and detain the children. Thus, to the extent he acted with malice (which is a question of fact), he is not statutorily immune (SSUF 5). *Hee So v. Sook Ja Shin*, 212 Cal.App.4th 652, 671-672 (2013)

Plaintiffs have presented evidence that the Defendants' actions to remove the Mann Children from their home were performed in retaliation for Melissa Mann's complaints against them and the department. As this Court has already noted, "retaliation, of course, implies intentional conduct meant to harm another for purposes of revenge." (Document 102, 333:3-4) As a participant in these retaliatory acts, Fierro acted with the malice necessary to overcome any claimed statutory immunities (including Government Code §§820.2 and 821.6 and Civil Code §47).

Lastly, Fierro cannot claim statutory immunity from Plaintiffs' claim for false imprisonment. Government Code §820.4 states "nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

C.   Fierro Participated in the Assault, Battery, and False Imprisonment of the Mann Children

Fierro claims that he cannot be liable for personally committing assault and battery on the Mann Children, for falsely imprisoning the Mann Children, or for "injury to [the] personal relations" of the Mann Family because he was never in their physical presence. However the very case cited by Defendants in support of this argument establishes Fierro's liability for these intentional torts. "California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. 'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a

16

tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 879 (2007).

By virtue of his participation in the interactions with the Mann Family, meetings with Hernandez and Quadros concerning the family, and his consensus with the decision to file the falsified protective warrant application, Fierro provided substantial assistance to the joint scheme to remove and detain the Mann Children from their parents' custody. Fierro knew that Hernandez's actions were wrongful and contrary to well-established law. (SSUF 20)  There can be no doubt that the wrongful removal of the Mann Children from their home constituted an assault and battery on those children, and resulted in their false imprisonment.

Fierro is also liable for his violation of Civil Code §43. That section recognizes the right to "protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."  Not only does this section codify causes of action for assault, battery and false imprisonment (*Marsh v. San Diego County*, 432 F.Supp.2d 105, 1057-58 (SD Cal.2006)), but it includes an additional right to be free from injury to personal relations. There can be no doubt that Fierro's misconduct leading to the wrongful removal of the Mann Children from their parents caused irreparable harm and injury to the Mann Family's personal relations.

Fierro is not entitled to summary judgment on Plaintiffs' claims for assault and battery, false imprisonment, or violation of Civil Code §43.

D.   <u>Fierro's Actions Were Sufficiently Outrageous to Support Plaintiffs' Claim for Intentional Infliction of Emotional Distress</u>

As outlined above, the evidence demonstrates a clear inference that Fierro participated in the retaliatory actions against the Mann Family. It is hard to imagine an action more outrageous that "goes beyond all possible bounds of decency" then a government official's wrongful removal and detention of small children from their

17

1  parents in retaliation for some perceived personal or professional slight,.  Again, the

2  issue of malice is one for the jury (*see, e.g., Yun Hee So v. Sook Ja Shin*, *supra,* 212

3  Cal.App.4th at 671-672, and therefore Fierro is not entitled to summary judgment on

4  Plaintiffs' claim for intentional infliction of emotional distress.

5       E.   Due to his Participation in Plaintiffs' Constitutional Violations, Fierro

6            is Liable Under Civil Code §52.1

7       Civil Code §52.1 allows parties to recover damages if they can demonstrate

8  their state or federal constitutional rights have been violated. As discussed above,

9  Fierro's independent actions resulted in the violation of Plaintiffs' Fourth and

10 Fourteenth Amendment rights, assuming a finding of malice, and were in retaliation

11 for the exercise of Melissa Mann's First Amendment rights. Contrary to

12 Defendants' assertion, Plaintiffs need not show "threats, coercion or intimidation"

13 separate from the underlying constitutional violations. *D.V. v. City of Sunnyvale*, 65

14 F.Supp.3d 782, 787 (N.D.Cal. 2014) Fierro is not entitled to summary judgment on

15 Plaintiffs' claim for violation of Civil Code §52.1.

16      Plaintiffs' evidence and the reasonable inferences drawn therefrom show that

17 Fierro was an active participant in the wrongful removal of the Mann Children from

18 their parents. Defendants' motion for summary judgment as to Fierro must be

19 denied.

## VI.

## DEFENDANTS MONGE AND SOLIS FAILED TO DISCLOSE KNOWN
## EXCULPATORY INFORMATION TO THE COURT

23      Defendants contend that summary judgment is proper as to all claims asserted

24 against Defendants Monge and Solis. Although Defendants refer to seven claims

25 against Monge and Solis, Plaintiffs are only asserting claims for those Defendants'

26 violation of Plaintiffs' civil rights under section 1983 and Civil Code § 43 and 52.1,

27 and intentional infliction of emotional distress.

28

18

A.   <u>Defendants Monge and Solis Are Liable to Plaintiffs For Their</u>
<u>Violation of Plaintiffs' Constitutional Rights</u>

When Monge and Solis were assigned to the Mann Family, they reviewed the DSL, the Detention Report and the Warrant Application. (SSUF 10-13) By virtue of their review of these documents, Monge and Solis knew that evidence concerning the Manns' cooperation with the County had been omitted from the Detention Report and Warrant Application. (SSUF 15-16) Monge and Solis also knew that the Mann Parents had cooperated fully with the County throughout the entire process, had followed County protocol concerning their complaints against Hernandez, and had not shown hostility toward the County's social workers. (SSUF 14) Despite this knowledge, and their duty to provide the court with full and accurate information concerning the investigation (SSUF 18), a reasonable jury could infer that Monge and Solis continued to conceal the true facts from the court during the continuing legal proceedings in an effort to retaliate and cover up the misconduct of Defendants Hernandez, Quadros and Fierro.

As a result of the actions of Defendants Monge and Solis, the Mann Family was dragged through the court system for four months, in violation of their Fourteenth Amendment right to due process. (*See, e.g., Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir.2014) [finding liability for officers' "silence in the face of compelling exculpatory evidence."] In addition, Defendants Monge and Solis's actions violated the Mann Family's Fourteenth Amendment "constitutional right to live together without governmental inference (*Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir.1999))[1], because the continuing court order precluded Melissa and Mark Mann from being alone with their children in their own home (SSUF 21).

---

[1]  The right for a family to live together without government interference is so well established that it even extends to parents without physical custody of their children. *See, e.g., Burke v. County of Alameda*, 586 F.3d 725, 733 (9th Cir.2009), *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir.2006)

19

Accordingly, the motion for summary judgment on the section 1983 claim by Monge and Solis must be denied. Furthermore, since a reasonable inference can be drawn that Monge and Solis's actions were motivated by a desire to cover-up the wrongful misconduct of Defendants Hernandez, Quadros and Fierro, Plaintiffs' Civil Code Section §52.1 must also survive summary judgment.

B.   Defendant Monge and Solis Cannot Claim State Law Immunity

Monge and Solis cannot avail themselves of immunity for their actions. Monge and Solis failed to disclose known exculpatory evidence to the court. Pursuant to Government Code §820.21, the civil immunities claimed by Monge and Solis (Government Code §§820.2, 821.6 and Civil Code §47) do not extend to their actions. There is sufficient evidence that a reasonable jury may infer that this "failure" was actually part of a conspiracy to cover up the retaliatory actions of Defendants Hernandez, Quadros and Fierro, supporting the malice component of §820.21.

C.   Defendants Monge and Solis' Actions Support Plaintiffs' Claim for Intentional Infliction of Emotional Distress

Similarly, a reasonable jury could find, based on the evidence outlined above, that Monge and Solis knew that Defendants Hernandez, Quadros and Fierro had procured the detention warrant through judicial deception, and that they continued to withhold the true facts concerning the Manns' initial cooperation with the agency as an effort to cover up the agency's wrongful conduct. If the jury were to so find, there is little doubt that it would also find that these actions went "beyond all possible bounds of decency."

Accordingly, Monge and Solis are not entitled to summary judgment on Plaintiffs' claim for intentional infliction of emotional distress.

D.   Monge and Solis' Actions Damaged the Mann Family's Relationships

For the same reasons, Monge and Solis are not entitled to summary judgment on Plaintiffs' claim for violation of Civil Code §43. Their actions caused injury to

20

1  the "personal relations" of the Mann Family as outlined above. (See Section VI

2  {A.} supra)

3      Accordingly, Defendants are not entitled to summary judgment on Plaintiffs'

4  claims against Monge and Solis based upon section 1983, intentional infliction of

5  emotional distress, Civil Code §43, and Civil Code §52.1.

6                                **VII.**

7      **PLAINTIFFS ARE NOT REQUIRED TO SHOW THREATS,**

8   **INTIMIDATION OR COERCION SEPARATE AND APART FROM THE**

9   **UNDERLYING CIVIL RIGHTS VIOLATIONS TO ESTABLISH THEIR**

10              **CLAIMS UNDER CIVIL CODE SECTION 52.1**

11      Defendants claim that Plaintiffs cannot establish their Civil Code §52.1 claim

12  against Defendants Hernandez and Quadros because "there is no evidence they used

13  intimidation, threats or coercion."

14      However, as previously discussed, Civil Code §52.1 does not require proof of

15  threats, coercion or intimidation where the defendants' actions are intentional. *D.V.*

16  *v. City of Sunnyvale, supra*, 65 F.Supp.3d at 787. Similar to this case, the

17  defendants in *D.V.* cited *Shoyeye v. County of Los Angeles*, 203 Cal.App.4th 947

18  (2012) to support the proposition that §52.1 requires a separate showing of threats,

19  coercion or intimidation. However, *Shoyoye* involved <u>negligent</u> misconduct—not

20  the intentional misconduct shown here.

21      Because the claims against Defendants Hernandez and Quadros involve

22  intentional violations of Plaintiff's constitutional rights, Plaintiffs are not required

23  to show separate threats, coercion or intimidation.

24      Moreover, this Court has already identified, recognized and commented upon

25  Defendants' "coercion and intimidation."[1] In its August 8, 2013 order, this court

26

27  _____

28  [1] The Court further identified Hernandez and Quadros's threat to remove the children if the Mann's did not sign the "voluntary safety plan". (Doc 102 4:14-5:13)

21

1  stated "Plaintiffs claim, and Defendants dispute, that the social workers were
2  retaliating against Plaintiffs for challenging the social workers' authority.
3  Retaliation, of course, implies intentional conduct meant to harm another for
4  purposes of revenge." (Document 102, 33:1-4) This Court has also already found
5  that Civil Code §52.1 is "an enabling statute and does not confer any substantive
6  rights, but instead allows a party to recover damages if they can demonstrate their
7  state or federal constitutional rights have been violated." (Document 102, 34:1-4)

8      Defendants' cannot prevail on their motion for summary adjudication of
9  Plaintiffs' cause of action for violation of Civil Code §52.1.

10                                        **VIII.**

11  **THE INDIVIDUAL DEFENDANTS ARE LIABLE FOR ALL HARM TO**
12  **THE MANN FAMILY THAT WAS FORESEEABLY CAUSED BY**
13  **DEFENDANTS' WRONGFUL CONDUCT, INCLUDING THE HARM**
14  **CAUSED BY THE UNCONSTITUTIONAL, UNAUTHORIZED, OR**
15  **UNWARRANTED PHYSICAL EXAMINATIONS AT POLINSKY**
16                          **CHILDREN'S CENTER**

17      Plaintiffs do not claim that Defendants Hernandez, Quadros or Fierro are
18  liable for the specific Federal Constitutional violations arising out of the
19  examinations conducted at the Polinsky Children's Center (ie, individual 42 U.S.C.
20  1983 violations based upon medical procedures being performed without valid
21  order or consent, and without the parents' presence).

22      However, the PCC medical procedures *would never have occurred* in the
23  absence of Defendants' judicial deception in obtaining the detention warrant. The
24  damages sought by Plaintiffs in all claims against Hernandez, Quadros and Fierro
25  are a direct foreseeable consequence of their unlawful, unauthorized and
26  unwarranted actions and therefore extend to the harm caused by the medical
27  procedures, at PCC (resulting in assault, battery, intentional infliction of emotional
28  distress, and violation of Civil Code §52.1).(*See, e.g., Dillon v. Legg*, 68 Cal.2d

                                        22

728, 739 [defendants are liable for injuries to others which were reasonably foreseeable to the defendants at the time of their wrongful conduct.)

Defendants Hernandez, Quadros and Fierro knew when they submitted the warrant application and removed the Mann Children from their home that they would be examined by medical personnel at PCC. (SSUF 22) The knowledge of those Defendants concerning the scope of the examinations is irrelevant. **But for** the wrongful removal of the Mann Children from their home, based on the defective warrant, *the children would never have been examined at PCC*. It is for the jury to decide what damages, arising from the state law claims, accrued to the Mann Family as a result of the unlawful examinations.

## IX.

## CONCLUSION

Defendants' argument concerning qualified immunity verges on the absurd. Not only is there clear case law establishing retaliatory action by governmental officials *in the absence of probable cause* as a violation of civil rights, but simple *common sense* dictates that this outrageous behavior violated the civil rights of the entire family. As the *Duran* court noted, "anyone who takes an oath of office knows—or should know—that much." Defendants' motion for summary judgment on Plaintiffs' First Amendment retaliation claim must be denied.

Likewise, Defendants' motion for summary judgment on the claims against Fierro, and the claims against Monge and Solis must be denied. As a participant in the consensus to remove the Mann Children from their parents, Fierro is just as culpable as Hernandez and Quadros for the Plaintiffs' federal claims. Likewise, his claimed right to state law immunity is clearly superseded by his participation in the falsification of these reports.

And Monge and Solis, by participating in the retaliation and/or cover-up of the wrongful actions by Hernandez, Quadros and Fierro by failing to disclose

1  known exculpatory information to the juvenile court, are also subject to liability for

2  violation of Plaintiffs' civil rights.

3      Because Plaintiffs' section 1983 claims against Defendants are based upon

4  intentional misconduct, Plaintiffs are not required to make a separate showing to

5  support their claim under Civil Code 820.

6      Lastly, Defendants are liable for all consequences of their wrongful conduct,

7  including damages for the harm caused to the family, particularly under the

8  Plaintiff's state law claims, as a result of the medical procedures at Polinsky

9  Children's Center.

10      Accordingly, Plaintiffs request that Defendants' motion for summary

11  judgment be denied in its entirety.

12

13  DATED:  July 17, 2015              LAW OFFICE OF DONNIE R. COX

14                                        */s/ Donnie R. Cox*

15                                        _____

16                                        DONNIE R. COX
                                          Attorney for Plaintiffs,
17                                        MARK MANN, MELISSA MANN, and
                                          N.G.P.M., M.N.A.M, M.C.G.M, N.E.H.M,
18                                        minors by and through their Guardian Ad
                                          Litem, BRUCE PAUL
19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Opposition to Motion for Summary Judgment      Case No. 3:11cv0708GPC(BGS)**