UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MANN et al., Plaintiffs, v. COUNTY OF SAN DIEGO et al., Defendants. | Case No. 3:11-cv-0708-GPC-BGS **ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION OF COURT'S SUMMARY JUDGMENT ORDER REGARDING PLAINTIFFS' *MONELL* CLAIM REGARDING PARENTAL EXCLUSION FROM POLINSKY EXAMINATIONS** [ECF Nos. 226, 227, 247] |

Before the Court is Plaintiffs' March 18, 2016 motion for clarification, or, in the alternative, trial brief regarding Plaintiffs' *Monell* claim arising out of the Polinsky Children's Center Examinations. ECF No. 227. On March 28, 2016, following the pretrial conference, the Court invited additional briefing in response to Plaintiffs' motion, specifically on the issues of (1) whether Defendants are judicially estopped from claiming that County of San Diego ("County") did not have a policy of excluding parents from Polinsky Children's Center ("Polinsky") examinations; and (2) whether Plaintiffs must prove deliberate indifference. Jury Trial Preparation and Scheduling Order ("Trial Preparation Order") 1–2, ECF No. 235. Having reviewed the additional briefing, *see* Pl. Brief, ECF No. 239; Def.

Opp., ECF No. 240; Pl. Reply, ECF No. 241; Def. Request for Judicial Notice, ECF No. 242; Pl. Objection to Def. Request for Judicial Notice, ECF No. 243, and the applicable law, the Court now finds that (1) Defendants are judicially estopped from claiming that the County did not have a policy of excluding parents from Polinsky Children's Center examinations; and (2) Plaintiffs are not required to prove deliberate indifference. Accordingly, the Court now finds that Plaintiffs have satisfied all required steps of the *Monell* analysis, and therefore that, as a matter of law, the County violated Plaintiffs' constitutional rights through its policy of excluding parents from Polinsky examinations.

## BACKGROUND

The relevant facts in this case having been described in the Court's previous orders, the Court will not reiterate them in depth here. *See* 1st Summ. J. Order 2–12, ECF No. 102. In short, this is an action brought by Plaintiffs Mark and Melissa Mann and their four minor children N.E.H.M., M.C.G.M., N.G.P.M., and M.N.A.M ("Plaintiffs") challenging actions taken by the County, the County's Health and Human Services Agency ("HHSA"), and the County's Polinsky Children's Center, a temporary emergency shelter for children who are separated from their families (collectively "Defendants"), during the course of a child abuse investigation that led to the removal of the minor children from the family's home. *Id.*

Plaintiffs initially filed a complaint against the County, HHSA, Andrea E. Hernandez (née Cisneros), Lisa J. Quadros, Gilbert Fierro, Kelly Monge, Susan Solis, and six other now dismissed defendants. Compl.; *see also* Orders Dismissing Defs., ECF Nos. 93, 142. Plaintiffs asserted eight causes of action for: (1) assault; (2) battery; (3) false imprisonment; (4) violation of federal civil rights guaranteed by the First, Fourth, and Fourteenth Amendments under 42 U.S.C. § 1983; (5) *Monell* claims related to the County's policies; (6) intentional infliction of emotional distress ("IIED"); (7) violation of state civil rights under Cal. Civ. Code § 43; and (8) violation of state civil rights under Cal. Civ. Code § 52.1. Compl. 30–33. Every cause of action was pled

against all the Defendants, with the exceptions of the fourth cause of action for the § 1983 claims, which was pled solely against the individual defendants, and the fifth cause of action for the *Monell* claims, which was pled solely against the County, HHSA, and Polinsky. *Id.*

Following parties' initial cross-motions for partial summary judgment, the Court found that Defendants were entitled to qualified immunity with respect to Plaintiffs' fourth cause of action for the § 1983 claims to the extent that such claims were based on Defendants': (1) interview with N.G.P.M. at school; (2) examination of the children at Polinsky; and (3) listing of Mr. Mann on California's Child Abuse Central Index ("CACI"), but not with respect to their actions in obtaining and executing the protective custody warrant. 1st Summ. J. Order 16–29. Defendants were granted summary judgment on Plaintiffs' Monell cause of action with regards to the charge of inadequate training. *Id.* at 30–31; Scheduling Order 8, ECF No. 190.

Subsequently, the Court found good cause to direct additional briefing in order to determine whether the following issues can be decided on summary judgment: (1) Plaintiffs' *Monell* cause of action based on the Polinsky exams; (2) Defendants' qualified immunity defense to Plaintiffs' § 1983 First Amendment retaliation claim; (3) all claims against Defendants Fierro, Monge, and Solis; and (4) Plaintiffs' state law causes of action of assault, battery, false imprisonment, IIED, and violations of Cal. Civ. Code § 43 and § 52.1. Scheduling Order 9–10.

On November 23, 2015, the Court issued a second summary judgment order. *See* 2nd Summ. J. Order, ECF No. 211. Therein, the Court found that for Plaintiffs' *Monell* claims based on the County's alleged policies of (1) allowing medical examinations to be performed at Polinsky in the absence of exigency, valid parental consent, or court order specific to the child being examined; and (2) preventing parents or guardians from being present during medical procedures, including examinations performed at Polinsky, only the latter policy constituted a deprivation of Plaintiffs' constitutional rights. *Id.* at 11. The Court then found that Plaintiffs had also established that the latter

policy was the moving force behind the violation of Plaintiffs' constitutional rights, but had not conclusively established that the County in fact had such a policy, nor that the policy amounted to a deliberate indifference to a constitutional right. *Id.* at 22–24.

In the second summary judgment order, the Court also granted Defendants' motions for summary judgment: (1) based on qualified immunity with respect to Plaintiffs' § 1983 First Amendment retaliation claim; (2) on all claims against Defendants Fierro, Monge and Solis; and (3) on Plaintiffs' state law tort claims against Defendants Hernandez and Quadros to the extent that they relied on the Polinsky medical examinations, and dismissed Defendants Fierro, Monge, and Solis. *Id.* at 36. Finally, the Court denied Defendants' motion for summary judgment on Plaintiffs' § 52.1 claims as to Defendants Hernandez and Quadros. *Id.*

On March 18, 2016, Plaintiffs moved to clarify the Court's summary judgment ruling on the *Monell* issue, arguing that at the hearing on the motion for summary judgment held on October 16, 2015, County Counsel openly acknowledged that it was the County's policy to exclude parents from examinations conducted at Polinsky, and that deliberate indifference was not a required prong of the *Monell* inquiry in the instant case. ECF No. 227 at 3–4. On March 25, 2016, the Court conducted a pretrial conference. ECF No. 234. Following the pretrial conference, the Court directed the parties to provide additional briefing on the *Monell* issues of (1) whether Defendants are judicially estopped from claiming that County did not have a policy of excluding parents from Polinsky examinations; and (2) whether Plaintiffs must prove deliberate indifference. Trial Preparation Order 1–2.

## LEGAL STANDARD

### I. Summary Judgment

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## II. Reconsideration

District courts retain inherent authority to revise interim or interlocutory orders any time before entry of judgment. *Abada v. Charles Schwab & Co.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000) (citing *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[T]he interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment."); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989); Fed. R. Civ. P. 54(b) (noting that unless final judgment has been entered, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities")). A district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law. *Id.* (citing *Sport Squeeze, Inc. v. Pro–Innovative Concepts, Inc.*, 51 U.S.P.Q.2d 1764, 1771, 1999 WL 696009 (S.D. Cal. 1999); *Washington v. Garcia*, 977 F.Supp. 1067, 1068 (S.D. Cal. 1997)). But a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice. *Id.* (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

# DISCUSSION

## I. Whether Defendants are Judicially Estopped from Claiming That County Did Not Have a Policy of Excluding Parents from Polinsky Examinations

In the Court's second summary judgment order, the Court found that whether the County actually had the contested policy of excluding parents from the examination room at Polinsky was a disputed issue of material fact that must be decided by the jury. 2nd Summ. J. Order 23. The Court observed that,

> Plaintiffs argue that Dr. Graff testified that the medical examinations were conducted according to the policies and procedures of the County of San Diego. Pls. SSUF in Support of Mot. Summ. J. 6 (citing Graff Dep., 51:12–14), ECF No. 197-4. Dr. Graff testified that she believed that it was Polinsky policy that parents were not allowed to attend medical examinations at Polinsky from 1994 to 2011. Graff. Dep. 110:17–22. However, when asked whether it was County policy to notify the parents before the examination occurs, she stated that while Polinsky did not notify the parent, she did not know "if the removing social worker or other agent informs the parent." Thus, there is some dispute over whether it was the overall policy of the County not to notify the parents before the examination occurred. Moreover, Defendants argue that "Dr. Graff was not a County employee and did not testify she was competent or knowledgeable about all County policies at Polinsky." Defs. Resp. to Pls. SSUF 6.

However, at the October 16, 2015 hearing on the second motions for summary judgment, County Counsel acknowledged that at the time the medical examinations were conducted in this case, County policy excluded parents from their children's medical examinations:

> THE COURT: In *Swartwood*, the Court found there was no dispute that the county's policy excludes parents from their children's medical exams at the Polinsky Children's Center.
>
> Do you likewise agree that the county policy excludes parents -- excluded the parents in this case from their children's medical exams?
>
> MR. BRODIE: It excluded them from the room. But as we presented testimony, or evidence, I believe, in a declaration, parents are allowed to be at Polinsky in the visiting room, and they can talk to medical staff there about their child's medical issues. But as far as at the time of this exam, 2010, parents were not allowed in the exam room at the time. Yes.

Transcript of October 16, 2015 Hearing 15, ECF No. 225.

Plaintiffs thus argue that the admissions of County counsel, combined with the admission by the County in other cases concerning Polinsky's practices such as *Swartwood v. County of San Diego*, 84 F. Supp. 3d 1093 (S.D. Cal. 2014) and *Parkes v. County of San Diego*, 345 F. Supp. 2d 1071 (S.D. Cal. 2004) that this was County policy, judicially estop the County from now claiming that the County did not have such a policy during the relevant time period of this case. Pl. Brief 5–7.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the

prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (alteration in original) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)) (internal quotation marks omitted). The Supreme Court observes that

> This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); *see* 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory[.]").

*Id.* "[C]ourts have uniformly recognized that [the] purpose [of this rule] is 'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing their positions according to the exigencies of the moment.'" *Id.* at 749–750 (citations omitted). "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Id.* at 750 (citations omitted). "[S]everal factors [that] typically inform the decision whether to apply the doctrine in a particular case" include (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled"; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750–51 (citations omitted).

The County now provides a number of declarations from County employees purporting to demonstrate that at the time the examination of the Mann children occurred, Polinsky did not have a policy or practice of excluding parents from

medical examinations. The County claims that these declarations demonstrate that it was not the case that parents were not "allowed" to be present in the exam room during the exams, but simply that "parents did not attend the exams because they were not informed about the exams." Def. Opp. 12. But the declarations reveal that the parents were not informed about the exams precisely *because* the County believed that they did not have a right to attend. *See,e.g.*, Brodie Decl. 2–3, ECF No. 240-4 ("[U]pon further analysis and reflection, I realize my statements concerning parental presence at the exams were not entirely accurate. Polinsky is a confidential placement for children, and at the time of the exams in this case and in *Swartwood*, parents and guardians did not attend the exams. The reason they did not attend is that they were not informed by social workers at the time of the removal that the child would have a medical examination at Polinsky, and there were no steps taken to make provisions for them to attend. They were not informed by the County about the exams because the County did not believe they had a right to be present . . . .").[1]

*Monell* liability attaches whether the constitutional deprivation is attributable to an "overall policy," a "persistent and widespread practice," or the direction of a policymaking official. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1144–45 (9th Cir. 2012) (citing *Connick v. Thompson*, 131 S. Ct. 1359 (2011)). Here, the County is effectively admitting that even if they did not have a written policy of excluding parents from these examinations, they had a persistent and widespread practice of

---

[1] *See also* McCarthy Decl. 2–3, ECF No. 240-3 ("Based on my office's evaluation of the *Wallis* case, we did not believe the holding of the case meant parents had a right to be present at the Polinsky exams . . . . My understanding is that before the changes in 2015, parents and guardians whose children were removed by County social workers were not informed about the Polinsky medical exams because they were just part of the routine admission process . . . ."); Rincon Decl. 2, ECF No. 240-1 ("[T]he medical examinations for children entering Polinsky are conducted in an area not accessible to the public . . . . In 2015, the County moved the medical exam room location at the Polinsky facility, changed its forms so that parents and guardians would be notified about their child having a medical exam in Polinsky, and provided for parents and guardians to attend the exam if they wished. . . . [B]efore 2015, when children were removed from their parents' or guardians' care by County of San Diego social workers, the social workers did not inform the parent or guardian that their child was going to have a medical exam at Polinsky.").

doing so. *See also* Def. Opp. 13 (admitting that "the County is not currently saying parents were allowed into the Polinsky exams").

Moreover, as Plaintiffs point out, the County consistently adopted the position not only that they had a policy of excluding parents from Polinsky examinations, but that doing so did not amount to a *Monell* violation, in multiple cases before courts in this district. *See Swartwood*, 84 F. Supp. 3d at 1116 (noting that Defendant's opposition brief stated that "'there is no factual dispute about parental presence at the Polinsky exams. Parents are not allowed in the exam room when the Polinsky exams are conducted, though they are allowed to visit their children in the visitation area and speak to the doctors about their children's medical issues.'"); *Parkes*, 345 F. Supp. 2d at 1095 ("It is undisputed that the non-offending parent is not permitted to be present at physical examinations conducted by the agency.").

Thus, it is plain both that the County's current position is "clearly inconsistent" with its earlier position, and that the County has previously succeeded in persuading a court to accept the County's earlier position. In addition, the Court observes that to allow the County to adopt its current position would allow the County to derive an unfair advantage, since the County appears to have adopted its current position only because three courts in this district have now found that the parental exclusion policy constitutes a constitutional deprivation under *Monell*. Thus, the Court finds that the County is judicially estopped from claiming that the County did not have a policy of barring parents from attending their children's medical examinations at Polinsky.

**II. Whether Plaintiffs Must Prove Deliberate Indifference**

Previously, the parties did not dispute whether deliberate indifference is a

required prong for *Monell* liability at the summary judgment stage.[2] However, Plaintiffs now argue that deliberate indifference is not a required prong, Pl. Brief 10, while Defendants maintain that it is, Def. Opp. 8. Upon review of the applicable law, the Court agrees with Plaintiffs that deliberate indifference is not a required element for *Monell* liability in the instant case.

In the Court's previous summary judgment order, the Court stated that "[t]o establish municipal liability where a municipality's inaction in failing to protect the plaintiffs' constitutional rights is the source of the deprivation, the plaintiffs must show that (1) they were deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to the constitutional right; and (4) the policy was the "moving force behind the constitutional violation." 2nd Summ J. Order 10 (citing *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001)) (internal quotation marks omitted). This Court observed that deliberate indifference is generally considered a jury question, and found that whether County acted with deliberate indifference was a disputed issue of material fact that must be decided by the jury. *Id.* at 23–24 (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1195 (9th Cir. 2002)).

However, a closer review of the caselaw discloses two types of *Monell* liability: the "direct" and "indirect" paths to municipal liability. *Monell* itself did not include a deliberate indifference prong. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978). Analyzing the legislative history of the Civil Rights Act of 1871, the Supreme Court concluded that Congress intended for municipalities and other local government units to be included among those "persons" subject to § 1983 liability. Where a local government's "policy statement, ordinance, regulation, decision" or "custom or usage" "so permanent and well

---

[2] Indeed, at the hearing for the second summary judgment motions, the Court asked Plaintiffs' counsel whether deliberate indifference is a required showing, and Plaintiffs' counsel responded that "deliberate indifference is an element always in a *Monell* cause of action." Transcript of October 16, 2015 Hearing 25, ECF No. 225.

settled as to constitute a 'custom or usage' with the force of law" is "responsible for a deprivation of rights protected by the Constitution," that local government may be sued under § 1983. *Id.* at 690–91 (citations omitted). *Monell* also imposed a causation requirement: the policy must have been what the Court termed "the moving force of the constitutional violation," *id.* at 694, and a municipality cannot be held liable under § 1983 on a *respondeat superior* theory, *id.* at 691.

Following *Monell*, the Supreme Court struggled in a series of cases with what to do in instances where the direct causal link between an averred policy and constitutional deprivation was less clear than in *Monell* itself (where an official policy compelling pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons was the straightforward cause of the constitutional deprivation). *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989) (citing cases). On the one hand, the Court was reluctant to find that municipalities can only be found liable under § 1983 where "the policy in question [is] itself unconstitutional." *See, e.g.*, *id.* at 386 (alteration in original). On the other hand, the Court feared that "[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983," because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *See id.* at 391–92 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).

In *City of Canton*, the Supreme Court decided that the "deliberate indifference" test struck the best balance between these competing values in cases where the plaintiff alleges that the municipality's *inaction* in failing to protect plaintiff's constitutional rights is the cause of the constitutional deprivation. *Id.* at 388. In *Canton*, the plaintiff argued that the municipality was liable under § 1983 for a failure to train its police officers where, after the plaintiff was arrested and brought to the police station, police officers did not summon medical attention for

the plaintiff after she became incoherent and slumped on the floor on several occasions over the course of about an hour. *Id.* at 381. The Court found that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 388. Cases that followed *Canton* further developed the meaning of the "deliberate indifference" test, but predominantly in the failure-to-train context, or analogous theories like negligent supervision or hiring. *See, e.g.*, *Connick*, 131 S. Ct. 1359; *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997); *Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (holding that, to prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

Thus, the Ninth Circuit has characterized existing *Monell* doctrine as creating "[t]wo [p]aths" to municipal liability. *See Gibson*, 290 F.3d at 1185; *see also Tsao*, 698 F.3d at 1142; *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). First, under the "direct" route to *Monell* liability, "a plaintiff can show that a municipality itself violated someone's rights or that it directed its employee to do so." *See Gibson*, 290 F.3d at 1185 (citing *Bryan Cnty.*, 520 U.S. at 404).

> Examples of this direct path to municipal liability include: a city's policy of discriminating against pregnant women in violation of the Fourteenth Amendment, *Monell*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; a policy-maker's order to its employees to serve capiases in violation of the Fourth Amendment, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); and a county policy that policymakers know will place aggressive and passive homosexuals in the same jail cell in violation of the passive homosexual's Fourteenth Amendment right to personal security. *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991) (en banc).

*Id.* at 1185–86.

Second, under the indirect route, "a plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed

by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." *Id.* at 1186 (emphasis added) (citing *Canton*, 489 U.S. at 387–89). In the latter case, plaintiffs must then show that "the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Id.* at 1186 (citing *Canton*, 489 U.S. at 387).

In *Van Ort*, plaintiffs brought suit against the County of San Diego, the San Diego Sheriff's Department, and others, seeking damages for mental and physical injuries incurred when a Sheriff's Deputy, while off-duty, "attacked and tortured" plaintiffs during the course of a home invasion conducted by the Deputy. *Id.* at 833–34. The court found that any negligent hiring or supervision of the Deputy was not the proximate cause of the injuries suffered, since the Deputy's actions as a private individual were an intervening cause of the attack on plaintiffs. *Id.* at 837.

Similarly, in *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), the jury found that a county was "deliberately indifferent" to the right of detainees not to be incarcerated without prompt pretrial procedures where its policymaker knew that "some inmates could not communicate their plight or were out of touch with their families or lawyers[,] some inmates remain[ed] incarcerated for a period of time because they missed their arraignments[, and in] at least 19 incidents between 1981 and 1989[,] individuals sat in jail for periods of undetermined length after they missed arraignment," but did not develop any procedures to alleviate this problem. *Id.* at 1477–78.

As the Ninth Circuit observes, the salient inquiry is thus whether the constitutional violation is the result of an "overall policy," a "persistent and widespread practice," or the direction of a policymaking official. *See Tsao*, 698 F.3d at 1144–45 (citing *Connick*, 131 S. Ct. at 1359). Defendants argue that the indirect

path to *Monell* liability ought to apply because the County did not have either a formal policy regarding parental presence at the Polinsky exams, or a practice or custom of barring parents from the exam. Def. Opp. 9. However, as discussed *supra* in Part I, the Court now finds that the County did indeed have such a policy or practice. As such, the Court also finds that the direct path to *Monell* liability applies, and Plaintiffs do not need to show deliberate indifference.

## CONCLUSION

Since the Court found in the Second Summary Judgment Order, ECF No. 211, that a municipal policy or practice of preventing parents or guardians from being present during the Polinsky examinations constituted a deprivation of Plaintiffs' constitutional rights, and that Plaintiffs had also established that such a policy would be the moving force behind the violation of Plaintiffs' constitutional rights, and now finds that the County had such a policy or practice, and that Plaintiffs are not required to show deliberate indifference, Plaintiffs have satisfied all the elements to establish *Monell* liability as to the County's exclusion of Plaintiffs from their children's medical examinations at Polinsky.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Court **GRANTS** summary judgment in favor of Plaintiffs as to their *Monell* claim relating to the County's exclusion of Plaintiffs from their children's medical examinations at Polinsky.
2. The Court **DENIES** Defendants' request for additional briefing and ruling on an issue of law regarding *Monell* claim for failure to provide exculpatory evidence. ECF No. 226. Parties may address this issue using one of their allotted motions in limine if they so choose.
3. The Court **DENIES** Defendants' ex parte motion for permission to file additional motions in limine. ECF No. 247. The instant Order reduces the number of triable issues, such that the Court questions whether even eight

motions in limine are necessary. That said, the Court will continue to permit each side to file a maximum of eight motions in limine.

**IT IS SO ORDERED.**

DATED: June 17, 2016

HON. GONZALO P. CURIEL
United States District Judge